# Appeal of Fox and Wife.

112  337
121  128
123  620
123  625

112  337
129  451

112  337
138  383

112  337
139  617

112  337
144  364
145   85

112  337
148  603
151  270

112  337
157  523

112  337
188  189

112  337
f195  635
195  636

112          337
d 20 SC  215
  20 SC  °218

112          337
208      °507
  26 SC  ⁵153

112          337
211       55

112          337
29 SC    155

112      337
f224     243

1. The taxing power of the state, within the limits of the Constitution, is bounded only by the necessities of the state and the will of the people. It may select its subjects of taxation, provide the requisite machinery for the assessment and collection of taxes, and impose penalties for their non-payment.

2. The legislature has power to provide for an increase of the assessment of a taxpayer in the case of his refusal to comply with the law in the matter of the return of his property to the assessor, by the addition of fifty per centum to the amount of his assessment estimated by the assessor from the best information at his command.

3. The exception in the first section of the Act of June 30th, 1885, of "notes or bills for work or labor done" from other notes or bills as subjects of taxation, is in violation of Article IX. section 2 of the Constitution. This exception, therefore, drops out of the Act; but the Act stands.

4. The proviso, in the first section of said Act, exempting building associations from the operation of the Act, is harmless, because said section does not, and was not intended to apply to corporations of any description.

5. The phrase, "any person or persons whatsoever," in the first section of said Act, does not include corporations.

6. A tax upon the capital stock of a corporation is a tax upon its property and assets.

7. The tax on moneys at interest, mortgages, etc., imposed upon natural persons by said Act, is not by said Act extended to corporations. The Act does not, however, for this reason, conflict with Article IX. sections 1 and 2 of the Constitution, for said Act being a supplement to the Act of June 7th, 1879, the two Acts must be read together, and by the Act of 1879, a tax similar to that imposed on the said property of natural persons by the Act of 1885, is imposed on the capital stock of corporations, artificial persons, by the Act of 1879.

8. The constitutionality of the said Act of 1885 does not depend on section twenty of said Act, repealing taxes heretofore laid on manufacturing corporations, as the Act is complete without it. The effect of the repeal of the tax on this class of corporations is not discussed or determined.

March 10th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

APPEAL from the Court of Common Pleas of *Northampton County:* In equity: Of January Term, 1886, No. 323.

This was an appeal by Edward J. Fox and Elizabeth F. R. Fox, his wife, from a decree of said court dismissing their bill

2 AMERMAN—22

[Appeal of Fox and Wife.]

in equity filed by them against Edward Lerch, Reuben Fehnel and Tilghman Wolfe, County Commissioners of Northampton County, and Hiram Edelman, assessor of the sixth ward in the Borough of Easton, said county.

The bill recites that the complainants are residents of Easton, and that Hiram Edelman is the assessor of the sixth ward, in which the plaintiffs reside. That he served a notice upon the plaintiffs requiring them to make a return of their personal property, viz., mortgages, notes, etc., for taxation, in accordance with the Act of June 30th, 1885. That upon the refusal of the plaintiffs to make such return, the assessor would estimate the amount of their property and return the same to the county commissioners, who would add fifty per centum thereto, and make the aggregate amount the basis of taxation of the personal property of the plaintiffs. That the Act of June 30th, 1885, is in conflict with sections 1 and 2 of Article IX. of the Constitution, and also with section 3 of Article III., they asked for an injunction to restrain the assessor from requiring the plaintiffs to make a return, and from estimating and returning to the commissioners the estimate, and restraining the commissioners from adding fifty per centum to any estimate made by the assessor.

The answer of the defendants admits the statements of fact contained in the bill, but denies that the Act of June 30th, 1885, is unconstitutional.

The case was heard on bill and answer. The court, SCHUYLER, P. J., entered a decree dismissing the plaintiffs' bill, and filed the following opinion:

The serious question raised by the pleadings, and the only question much discussed on the argument, is as to the constitutionality of Act 30th June, 1885, P. L. 193, entitled "A further supplement to an Act to provide revenue by taxation, approved the 7th day of June, 1879." It cannot be denied that this is a question of the gravest importance, and yet, in the view we take of it, it does not call for, even if in the advanced state of the authorities it admits of, very elaborate discussion.

The first section of the Act in question reads as follows: "All mortgages, money owing by solvent debtors, whether by promissory note, or penal or single bill, bond or judgment; also all acts of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever—except notes or bills for work or labor done, and all obligations given to banks for money loaned, and bank notes—and all public loans and stocks whatsoever, except those issued by this Commonwealth or the United States, and all money loaned or invested in any other state, and all other moneyed capital in

the hands of individual citizens of the state, shall be and are hereby taxable for state purposes, at the rate of three mills on the dollar of the value thereof annually. Provided, that the same shall, after the passage of this Act, be exempt from all taxation except for state purposes. Provided, that the provisions of this Act shall not apply to building and loan associations."

It is claimed by the plaintiff, that this section offends against sections 1 and 2 of Article IX. of the new constitution, which provide as follows:

"SECTION 1. All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit and institutions of purely public charity.

"SEC. 2. All laws exempting property from taxation, other than the property above mentioned shall be void."

The argument is that the taxes imposed by the act under consideration are not uniform upon the same class of subjects, inasmuch as certain kinds of property " in the hands of individual citizens of the state " are taxed, whereas the same kinds of property held by corporations are not taxed, and because none of the property made taxable by the Act is taxable when held by a building and loan association, the effect of which, it is claimed, is to exempt property in the hands of corporations, which the constitution in the section quoted above says shall not be exempt. The force of this argument is apparent rather than real. There was no compulsion on the legislature to tax any portion of the subjects mentioned in the first section of the Act at all, and if they had not done so the whole would have been exempt. So much is conceded, but it is argued that when the legislature select any given subject for taxation, say mortgages, all mortgages held within the state, no matter by whom held, must be taxed.

The vice, as we think, in this position, is that it overlooks the power of classification vested in the legislature. "In the legitimate exercise of the power of taxation," says Judge SHARSWOOD in Durach's Appeal, 12 P. F. S., 494, "persons and things have been and may constitutionally be classified. . . . . . If the taxation is upon all of a class, either of persons or things, it matters not whether those included in it be one or many. . . . . . The legislature has often exempted certain classes of properties and even certain classes of persons from taxation altogether." It is true that Durach's Appeal

was decided before the adoption of the new constitution, but in Kitty Roup's Case, 32 P. F. S., 216, it is stated that the judges of the Supreme Court, whilst they were unable to agree upon the other questions in the case, were all of one mind, "that the power to classify the subjects of taxation is not taken away by the new constitution." So in Kittaning *v.* Commonwealth, 29 P. F. S., 104, AGNEW, C. J., speaking of the very clause in the new constitution now invoked by the plaintiffs, says: "Clearly there is nothing in this prohibiting the power to classify. Will it be argued that persons or the owners of property cannot be classified? For example, can it be said that all single freemen cannot be required to pay a uniform tax?" See also Banger's Appeal, 16 W. N. C., 289, which is the last utterance of the Supreme Court on the subject.

It is thus seen that the power to classify both persons and things for the purposes of taxation is undoubted. But the power to classify, so carefully defended by the Supreme Court, would be of no avail unless accompanied by the power to discriminate between the classes thus created. The existence of this latter power is expressly recognized, and the absurdity that would result from a denial of it is clearly pointed out in Durach's Appeal, *supra*.

So in Township *v.* Berger, 2 Pears., 231, Judge PEARSON, whose utterances on all questions relating to taxation are entitled to the greatest respect, concedes that the legislature may impose "taxes on one *class*, from which others should be free." Moreover, the whole tenor of tax legislation, as well since as before the adoption of the new constitution, is in harmony with this idea. Our statute books teem with Acts of Assembly, the constitutionality of which has never been called in question, imposing taxes upon corporations from which not only natural persons, but other corporations, are exempt. True, the discriminations thus made are against corporations, but the principle is the same. The constitutional rights of corporations are just as sacred as those of individual citizens, and the legislature has no more power to take the property of the one for public uses, without compensation, than it has to take the property of the other.

By keeping in view the power vested in the legislature to discriminate between classes of persons, the present question will be found to be free from all difficulty. The Act under consideration declares that certain property "in the hands of individual citizens of the state" shall be taxable for state purposes. This is but another way of saying that "individual citizens" as distinguished from corporations holding the particular kinds of property named shall pay a tax upon it: Kit-

taning *v.* Commonwealth, *supra.* The distinction between the two forms of expression is unmeaning: Id. Much of the confusion of thought injected into the present case comes from treating the classification made by the legislature as a classification of property rather than as a classification of persons. All, therefore, that the legislature has done has been to divide the tax-paying element of the state into two classes, taxing the one and exempting the other. The classification is a very natural one, and one that has been constantly recognized in tax legislation. There is nothing, as has been seen, in such a classification that is unconstitutional. It is not easy to understand why the proviso specially exempting building and loan associations was inserted, but it is enough that such associations constitute a " class " by themselves, and being such the legislature had a right to exempt them from the burdens imposed by the Act.

But it is claimed that the Act we have been considering, which is entitled " A further supplement to an Act entitled an Act to provide revenue by taxation," is unconstitutional upon another ground, to wit, that it violates section 3, Article III, of the constitution, which provides that " no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in the title."

I am inclined to think, without deciding the question, that section 20 of the Act, whose sole purpose is to exempt manufacturing corporations from the payment of taxes does offend against this clause of the constitution, but if so, the only effect would be to render this particular section void, without affecting the validity of the rest of the Act. An Act may be declared to be unconstitutional in part and sustained as to the rest of its provisions: Cooley on Con. Lim., 177, 178.

Without more, I think the Act constitutional in its main feature and so far as it directly affects these plaintiffs. That the Act is odious goes without saying. But all taxation is odious. We are all of us, perhaps, too prone to forget that the moneys raised by taxation constitute the sinews of government, without which all government would cease, and with it our dearest rights. It may be that the Act is oppressive and unjust. Upon that subject I express no opinion; further than to say, that if it is so, the remedy is with the legislature. The courts cannot declare an Act unconstitutional upon any such grounds: Weber *v.* Reinhard, 23 P. F. S., 370.

A point was made on the argument, but not much pressed, to the effect that inasmuch as section 6 of the Act makes it the duty of the taxpayer to " make return of aggregate amount of all matters owned by him," there is no authority to require the detailed statements called for in the blanks fur-

nished by the Auditor General.    I think that there is nothing in this point.    The Act expressly authorizes the Auditor General to prescribe the form of blanks to be used in making returns, which is in itself an indication that something more than the aggregate amount is to be returned, and this clearly appears from other portions of the Act.

And now, January 4th, 1886, the bill is dismissed.

The plaintiffs thereupon took this appeal, assigning for error the entry of said decree.

*Edward J. Fox* and *James W. Wilson*, for appellants.—We contend that the Act of June 30th, 1885, is in conflict with the constitution of 1874 in several particulars:

. 1. It is in conflict with sections 1 and 2 of Article IX, of the constitution.

2. Because it exempts building and loan associations from taxation under its provisions.

3. Because it exempts all manufacturing corporations from taxation under the revenue laws of the Commonwealth, except companies engaged in manufacturing gas and liquors.

4. Because it provides only for the taxation of the mortgages and other personal property of individual citizens, thereby exempting corporations of all kinds.

The provisions of the constitution are violated when the legislature taxes property in the hands of one class of persons and omits to tax property in the hands of other classes.  A law may exempt persons from taxation by omitting to provide for their taxation as completely as by an express provision exempting them.

In the Township of Londonderry *v.* Berger, 2 Pearson, 230, Judge PEARSON says : " Taking the sections 1 and 2 and art. 9, together, to us it is very clear that the framers of the constitution intended that from the time of its adoption, no property of any kind should escape taxation except that enumerated in the 1st section of the 9th article."

In Lehigh Iron Co. *v.* Lower Macungie Township, 81 P. F. S., 482, this court said that " these sections of the constitution were not an immediate repeal of local or special laws in force when the constitution was adopted, but the duty remains with the legislature to provide general laws for uniform taxation, and to harmonize all parts of the state by repealing local and special provisions that stand out upon the body politic as incongruous excrescences."    See page 486.

And the court on page 482 express the hope that " the constitutional restrictions upon the power of taxation will hereafter prevent local and unequal impositions."

The court recognizes the same doctrine in Watson *v.* Ches-

ter & Del. River R. R. Co., 2 Norris, 254, and Indiana Co. *v.* Agricultural Society, 4 Id., 357, holding that the provisions of the constitution were prospective and did not repeal local statutes inconsistent with it.

The legislature fulfilled its duty immediately after the constitution of 1874 was adopted by passage of the Act of May 14th, 1874, Purdon's Digest, p. 1596, § 90, exempting the property described in section 1 of Article IX.

In the Commonwealth *v.* Pennsylvania Coal Co., 2 Pearson, 402, decided by Judge PEARSON and affirmed by this court February 12th, 1876, the question was whether a tax of four cents per ton on anthracite coal mined by corporations imposed by the Act of May 1st, 1868, was in conflict with the constitution. The Judge says: " The statute referred to does not pretend to classify the subjects of taxation, does not impose the tax on all coal mined within the state, but only on that mined or purchased by railroad, coal or transportation companies, not on all coal, but only a certain kind—anthracite —therefore, the tax is not uniform, as required by the first section of the ninth article, and it exempts a very considerable amount of property from taxation, to wit, all of the coal consumed by these various companies in the transaction of their business in violation of the several sections of the same article ; " and on page 403, he says: " Were we called on to interpret the new law, if in the form of the old, we would be obliged to declare it entirely inconsistent with the constitution." The court therefore held that the company was liable to pay the tax due before the repeal of the Act of 1868: Sharpless *v.* The Mayor, 9 Harris, 168; Boyer's Appeal, 16 W. N. C., 296.

Now, the Act of June 30th, 1885, does not tax all mortgages, but only the mortgages held by individual citizens. It is, therefore, not uniform, for it suffers to escape taxation mortgages to the value of many millions held by building associations, insurance companies, trust companies, manufacturing and other corporations, and thereby, in the language of Judge PEARSON, *supra*, " necessarily increasing the burden of supporting the government on the residue less favored."

2. But it may be said that we have erroneously assumed that only the mortgages, etc., of individual citizens are to be taxed.

To this we answer that the Act does not in any part of it provide for the taxation of the mortgages or money of corporations ; nor is there any provision requiring any officer of any corporation to make a return, or inflicting any penalty for the neglect or refusal of any officer to do so.

This question has been adjudicated by this court, and under

the decision made in School Directors *v.* Carlisle Bank, 8 Watts, 291, it is plain that corporations are not taxable under this Act.

In Saving Fund *v.* Yard, 9 Barr, 361, this case was commented on and the court said: "Although there are some of the *dicta* in that case which I apprehend do not meet the entire approbation of the court, yet the exact point ruled—that is, that the word person does not usually include incorporations when used in statutes or common parlance, although in its legal import it embraces them, is well and of good authority."

3. This Act is in conflict with section 3 of Article III. of the constitution, which is as follows:

"No bill, except appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

(*a*) Does this act contain more than one subject?

The first nineteen sections are germane to the title, which is, "A further supplement to an Act entitled an Act to provide revenue by taxation, approved June 7th, 1879."

These sections provide for the assessment of taxes on certain kinds of property, and provide for the method of assessment and collection of the taxes.

But section 20 is not germane to the title, its purpose is to repeal the laws laying taxes on manufacturing corporations.

(*b*) The title does not disclose the purpose of the 20th section to abolish all taxes under all laws upon manufacturing corporations: Dorsey's Appeal, 22 P. F. S., 195; Beckert *v.* City of Allegheny, 4 Norris, 196; Rogers *v.* The Manufacturers' Imp. Co., 43 Leg. Int., 66.

4. Section 9 of the Act of 1885 is unconstitutional.

The provisions of this Act make two bases of taxation. The citizen who makes a return is to be taxed upon his actual property. The citizen who does not make a return is to be taxed upon property which he does not own.

This section does not provide that the additional fifty per cent. shall be inflicted as a penalty; and it is, therefore, plainly taxing citizens unequally and not uniformly: Banger's Appeal, 16 W. N. C., 276.

*W. S. Kirkpatrick, Frank Reeder, George F. P. Young,* for appellees.—1. There are certain well recognized canons which guide and control courts in determining the constitutionality of an Act of the Legislature. The rule of interpretation of a state constitution differs from that of the national constitution.

The powers not granted to the government of the Union are withheld; but the state retains every attribute of sovereignty

which is not taken away: Com. *v.* Hartman, 5 H., 119 ; Sharpless *v.* Phila., 9 H., 160–164 ; Weister *v.* Hade, 2 Smith, 474.

It is very well settled that no statute is unconstitutional merely because it is wrong in policy or principle : Erie *v.* N. E. R. R. Co., 2 C., 30 ; Com. *v.* Maxwell, 3 C., 458 ; Sharpless *v.* Phila., *supra.*

"The party who wishes us to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so."—BLACK, C. J., in Erie *v.* N. E. R. R. Co., *supra.*

" We can declare an Act of Assembly void only when it violates the constitution clearly, palpably, plainly ; and in such a manner as to leave no doubt or hesitation on our minds."— BLACK, C. J., in Sharpless *v.* Phila., *supra.*

" To doubt is to be resolved in favor of the constitutionality of the act."—SHARSWOOD, C. J., in Commonwealth ex rel. Wolf *v.* Butler, 3 Out., 540.

A law cannot be declared unconstitutional solely on the ground of unjust and oppressive provisions, or because it is supposed to violate natural, social or political rights, unless such rights are guaranteed by the constitution : Cooley on Const. Lim. (3d ed.) p. *164.

2. As to exemptions. The constitutional requirement of equality and uniformity only extends to such objects of taxation as the legislature shall determine to be properly subject to the burden. The power to determine the persons and the objects to be taxed is trusted exclusively to the legislative department: Cooley Const. Lim. (3d ed.) *615.

" Perfectly equal taxation will remain an unattainable good as long as laws and government and man are imperfect."— SHARSWOOD, J., in Grim *v.* School District, 7 Smith, 433–439.

The principle that pervades our constitution on this subject and that finds expression in the first section of Article IX, is classification.

" Class " is thus defined in Webster : " A group of individuals ranked together as possessing common characteristics."

In Durach's Appeal, 12 P. F. S., 491, which was decided before the new constitution, it was said, " that in the legitimate exercise of the power of taxation persons and things always have been and may constitutionally be classified.

In the case of Kittanning Coal Company *v.* Commonwealth, 29 P. F. S., 100, 104, in expressly commenting on the IXth article of the new constitution, this court declared that the power to classify persons as well as things is not taken away by that constitution, and that inequality will best be avoided by such classification : The same was held in Kitty Roup's case, 32 P. F. S., 211 ; Wheeler *v.* City of Phila., 27 P. F. S., 349.

The exemption of building associations is but the omission to tax a certain well defined and peculiar class of persons.

As to section 20, the same principle of classification would apply. But this section simply abolishes taxes previously imposed.

3. This brings us to the remaining subjects as to which discrimination is alleged to have been improperly made. It is said that the first section of the Act of June 30th, 1885, provides only for the taxation of the mortgages and other personal property of individual citizens, thereby exempting corporations of all kinds.

If, therefore, it was intended to exempt corporations, it can only be found in the use of the term "person or persons."

It has been over and over again decided that the use of the word "person" in a tax law includes corporations : See Louisville R. R. Co. *v.* Com., 1 Bush., 250 ; Tupp *v.* Merch. Mut. Fire Ins. Co., 12 R. I., 435 ; People *v.* McLean, 80 N. Y., 255.

The case of School Directors *v.* Carlisle Bank, 8 Watts, cited upon the other side, was decided upon the peculiar language of a particular statute, and because it appeared from the whole face of the statute that the popular use of the word "person" was intended. That plainly appears from the comments of the court in Saving Fund *v.* Yard, 9 Barr, 361.

In Commonwealth *v.* Butler, 3 Out., 541, C. J. SHARSWOOD, in applying the principles determining the constitutionality of an act in cases of doubt, says : "It follows as a necessary consequence of this principle that where the contention is as to the meaning of a word, as it is in this case, if any meaning, whether technical or popular, will sustain the exercise of the power, it is sufficient.

4. It is argued that the Act conflicts with section 3, article III. of the constitution.

An Act entitled a supplement to a former Act, giving title and date, is a sufficient compliance with this constitutional requirement : Loewi *v.* Haedre, 8 W. N. C., 70 ; Craig *v.* Presbyterian Church, 7 Nor., 42 ; Buckalew on the Constitution, p. 68.

But it is said that no notice being given in the title of a purpose to exempt from taxation or to abolish the imposition of taxes, it is not sufficiently expressed, and is a subject not contained in the title.

We must consider the Act of 1879 with its former supplement, and the present Act as one continuous Act, having one general title, to wit : "An Act to provide revenue by taxation." Such being the case, one of the objects fully expressed in the title is the imposition of taxes upon the proper subjects being persons and things. The Legislature, as we have already

shown, has the power of classifying and selecting such subjects of taxation. It is not bound to tax all. It may therefore omit some and in its discretion tax others.

5. Do the provisions of the ninth section of the Act of June 30th, 1885, now under consideration by reason of the requirement upon the commissioners to add fifty per cent. to the assessors' return in cases of failure or refusal of the taxable to make the sworn return presented by the Act, violate the constitution and declaration of rights?

Does it infringe the declaration of rights?

The mere fact that this provision may be regarded as oppressive or unjust does not determine this question.

The present Act only requires him to add the sanction of his affidavit, which, to an honorable citizen, lays no greater stress upon his conscience than the obligation which already rested there before.

Nor, is there any injustice done, for the way of appeal is still open and an opportunity given to correct the assessment and substitute his own return upon giving satisfactory reasons for his failure to make the return as required. (See provisions of section 9.)

If he fails after abundant opportunity to appeal and give satisfactory reasons for his neglect, it is fair to presume that the estimate of the assessor with the fifty per cent. added, is not beyond the real amount of his assessable property.

But perhaps this provision may more properly be regarded as a penalty.

We fail to see in it any greater infringment of the rights of the citizen than is involved in the taxing power itself, to which penalties and forfeitures are necessarily incident.

Penalties to secure a return for the purposes of assessment have been recognized and sustained by our courts, notably in the case of Drexel & Co. v. Commonwealth, 10 Wright, 31.

In Butler v. Bailey, 2 Bay, 244, it was held competent to impose double taxes as a penalty for failure to make due return of property to be taxed.

The penalty of an increased assessment or loss of right of appeal for failure to make return seems to have been recognized as valid in the following cases: Otis v. Ware, 8 Gray, 509; Charlestown v. Middlesex, 101 Mass., 87; ·Lincoln v. Worcester, 8 Cush., 63; Sharp v. Apgar, 31 N. J. (Law), 358; Newell v. Town of Whittingham, 3 Eastern Reporter, 649; Biddle v. Oaks, 59 Cal., 294.

Mr. Justice PAXSON delivered the opinion of· the court May 10th, 1886.

This bill was filed by the complainants in the court below against Edward Lerch, Reuben Fehnel, and Tilghman Wolfe, Commissioners of Northampton county, and Hiram Edelman,

assessor of the sixth ward in the borough of Easton, to restrain defendants from requiring plaintiffs to make a return of their personal property for taxation under Act of June 30th, 1885.

The bill avers that the complainants are residents of Easton, and that Hiram Edelman is the assessor of the sixth ward, in which the plaintiffs reside. That he served a notice upon them requiring them to make a return of their personal property, viz., mortgages, notes, &c., for taxation, in accordance with the Act of June 30th, 1885. That upon the refusal of the plaintiffs to make such a return, the assessor would estimate the amount of their property, and return the same to the county commissioners, who would add fifty per centum thereto, and make the aggregate amount the basis of taxation of the personal property of the plaintiffs. That the Act of June 30th, 1885, is in conflict with sections 1 and 2 of Article IX. of the Constitution, and also with section 3 of Article III. The bill then prays for an injunction to restrain the assessor from requiring the plaintiffs to make a return, and from estimating their said property and returning such estimate to the commissioners, and restraining the commissioners from adding fifty per centum to any estimate made by the assessor.

The answer of the defendants admits the statement of facts contained in the bill, but denies that the Act of June 30th, 1885, is unconstitutional.

The case appears to have been set down for argument in the court below upon bill and answer. The court denied the injunction, and dismissed the bill. It was, therefore, a final decree.

The Act in question is entitled " A further supplement to an Act entitled ' An Act to provide revenue by taxation,' approved the seventh day of June one thousand eight hundred and seventy-nine."

The first section of said Act provides " That all mortgages, money owing by solvent debtors, whether by promissory note or penal or single bill, bond or judgment; also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever (except notes or bills for work or labor done, and all obligations given to banks for money loaned and bank notes), and all public loan or stocks whatsoever (except those issued by this Commonwealth or the United States), and all moneys loaned or invested in any other state, and all other moneyed capital in the hands of individual citizens of the state, shall be and are hereby taxable for state purposes, at the rate of three mills on the dollar of the value thereof annually : *Provided*, That the same shall, after the passage of this Act, be exempt from all taxation ex-

cept for state purposes : *Provided*, The provisions of this Act shall not apply to building and loan associations."

The seventh section enacts that "It shall be the duty of every taxable person to make the return prescribed in the preceding section (sixth) of this Act, within ten days after being required to do so, with his or her affidavit thereto attached, made and subscribed before the proper assessor, that the return is true and correct to the best of his or her knowledge and belief. Any person who shall wilfully and corruptly make a false and fraudulent return shall be guilty of wilful and corrupt perjury."

And by section ninth it is provided that " Upon the refusal or failure of any taxable person to make a return, as required by this Act, it shall be the duty of the assessor to make a return for such taxable person, estimating the amount from the best information at his command, to which estimated return the proper county commissioners or boards of revision shall add fifty per centum, and the aggregate amount so obtained shall be the basis for taxation : *Provided*, That if such taxable person, on or before the day fixed for appeals from assessments, shall present reasons under oath, satisfactory to the proper county commissioners or boards of revision, excusing the failure to make a return, and shall then make such return as should have been made to the assessor, the proper county commissioners or boards of revision, shall substitute the taxable person's return for that returned by the assessor, to have the like effect as if no failure had occurred."

The twentieth section repeals or abolishes all taxes laid upon manufacturing corporations by the revenue laws of the Commonwealth, with a proviso that said repeal shall not apply to corporations engaged in the manufacture of malt, spiritous, or vinous liquors, or in the manufacture of gas.

These are all the sections of the Act which I think it necessary to give at length or to epitomise. The remaining sections, if discussed at all, will only be referred to incidentally.

It was contended that the Act is in conflict with sections 1 and 2 of Article IX. of the constitution. Said sections are as follows :

Sec. 1. All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.

[Appeal of Fox and Wife.]

Sec. 2. All laws exempting property from taxation, other. than the property above enumerated, shall be void.

It was urged upon the argument that the Act of 1885 conflicts with these provisions because,

1. It exempts building and loan associations from taxation under its provisions.

2. It exempts all manufacturing corporations from taxation under the revenue laws of the Commonwealth, except companies engaged in the manufacture of gas and liquors.

3. It provides only for the taxation of mortgages and other personal property of individual citizens, thereby exempting corporations of all kinds.

To which may be added the further objection, not made upon the argument, that the Act expressly excepts from its operation " notes or bills for work or labor done."

It is clear, from the language of the Act, that it does exempt building and loan associations from taxation under its provisions; that it does repeal all taxes upon manufacturing corporations with the exceptions therein named; and that it does exempt from taxation "notes or bills for work and labor done." We are also of opinion that mortgages and other moneyed securities held and owned by corporations are not, and were not intended to be taxed by the Act in question. It was contended upon the argument, however, that the phrase " any person or persons whatsoever," was broad enough to include artificial persons or corporations, and that the subsequent phrase, "all other moneyed capital in the hands of individual citizens," strengthened this view, as . showing an intention to narrow the generality of the expression when it came to taxing " moneyed capital." If we concede the force of this it does not affect the main question, viz., the constitutionality of the Act for the obvious reason that if it is a violation of the constitution not to extend the tax on mortgages to corporations, it is equally a violation of it to relieve them from the tax on moneyed capital.

We are not without authority as to the meaning of the word " person " when used in statutes. The tax law of March 25th, 1831, P. L., 206, provided " that all personal estate and property within this Commonwealth, hereinafter described, owned or possessed by any person whatever, that is to say, all ground rents, money at interest, bonds, judgments, mortgages, &c., shall be subject to a yearly tax," &c. In the case of School Directors *v.* Carlisle Bank, 8 Watts, 289, this court held that the Act did not apply to corporations. It was said by Mr. Justice KENNEDY, in delivering the opinion of the court: " Although it cannot be denied but that the bank, being a corporation, and therefore a per-

son in contemplation of law, may be included by the use of the term 'person,' yet in the construction of statutes the terms or language thereof are to be taken and understood according to their usual and ordinary signification, as they are generally understood among mankind, unless it should appear from the context and other parts of the statute to have been intended otherwise; and if so, the intention of the legislature, whatever it may be, ought to prevail. . Therefore, in the case before us, the term 'person' being generally understood as denoting a natural person, is to be taken in that sense, unless from the context or other parts of the Act it appear that artificial persons, such as corporations, were also intended to be. embraced. Besides, it has generally, if not universally, been the case that the legislature in passing Acts, when it was intended that the provisions thereof should extend to corporations as well as to individuals, to designate specifically, so as to leave no room for doubt. Here, however, nothing of the kind appears, nor is there anything in any part of the Act which goes to show that a bank was intended to be comprehended within the meaning intended by the legislature to be affixed to the term person."

This case was commented on in Saving Fund v. Yard, 9 Pa. St. Rep., 359, where it was said : "Although there are some of the *dicta* in that case which, I apprehend, do not meet the entire approval of the court, yet the exact point ruled—that is, that the word person does not usually include incorporations when used in statutes · or common parlance, although in its legal import it embraces them, is wise and of good authority."

In Saving Fund v. Yard, the question was whether the personal property of corporations could be taxed under the Act of 1846. It was held that it could for the reason that the language of the Act clearly showed such an intention. The said Act required that "every person, every firm and partnership, and the president, secretary, cashier or treasurer of every company or corporate body" to deliver a statement of "all money due by solvent debtors to such person, partnership firm, company or corporate body, whether on mortgage, judgment," &c.

The Act of 1885 resembles the Act of 1846 in many respects, and it is at least probable that the draftsman of the later Act had the prior Act before him when he drew the bill, and it is not without significance that it omits all reference to corporations in the first section. The Act of 1885 does not in any part thereof provide by express terms, or by necessary implication, for the taxing of mortgages in the hands of corporations; nor is there any provision requiring any officer of any corpora-

tion to make a return under the first section of the Act of 1885, or inflicting any penalty for the neglect or refusal of any officer to do so.

We have not time to extend this branch of the discussion, nor do I deem it necessary. It has been recently thoroughly examined by two of the learned and able judges of the Common Pleas of Philadelphia, Judges MITCHELL and THAYER. See Legal Intelligencer of July 18, 1884, and of April 9, 1885. It is true Judge MITCHELL's opinion refers to the Act of 1881, but the language of the two Acts is substantially identical, and his reasoning applies equally well to the Act of 1885. They both hold, and conclusively show, that the language referred to in the two Acts does not extend the tax on mortgages, etc., to corporations.

I have devoted more space to this branch of the subject than was perhaps necessary, for the reason that the main argument of the defendants in error was that the first section of the Act of 1885 is broad enough in its terms to extend to corporations. Having at least endeavored to show that this point was not well taken, I will now proceed to the further discussion of the case.

Conceding then that the Act of 1885 does not extend the tax on moneys at interest, mortgages, etc., to corporations, does it follow that said Act conflicts with the section of the constitution which declares that "all taxes shall be uniform upon the same class of subjects within the limits of the authority levying the same?" If it does, the Act must fall, no matter what inconvenience may result to the state. This portion of the constitution is too important and valuable to be overridden by the Legislature, or frittered away by judicial construction. It was intended to, and does, sweep away forever the power of the Legislature to impose unequal burdens upon the people under the form of taxation. The evils which led up to its incorporation into the organic law are well known. The burden of maintaining the state has been, in repeated instances, lifted from the shoulders of favored classes and thrown upon the remainder of the community. This was done by means of favoritism and class legislation. Article IX of the constitution was intended to cut up this system by the roots, and we shall have no more of it if the legislative and judicial departments of the government perform their full duty in giving effect to that instrument.

The taxing power of the state is great and searching. Within the limits of the constitution it is bounded only by the necessities of the state and the will of the people. This must be so or the state might be without the means to sustain itself; to repel aggression from without or to suppress disorder

within.  So long as it lays its burdens upon all alike, there is hardly a limit to this power.  It may take from the people what its necessities demand.

The power of the state is conceded to select its subjects of taxation.  It may tax mortgages or it may omit to tax them.  It may tax horses or it may omit to tax them.  But this tax, upon whatever laid, must be uniform.  Thus it must be laid upon all taxpayers alike.  It cannot tax A on his mortgages or his horses, and exempt B from a like tax.  Nor do I see any distinction here between natural persons and artificial persons, commonly called corporations.  Each must bear its due share of the public burdens.  This is because the constitution declares that "all taxes shall be uniform."  It is perhaps vain to expect that any system of taxation shall produce exact uniformity; it is however both reasonable and possible to levy the taxes in such a manner that substantial justice and uniformity shall be the result.

While the first section of the Act of 1885 does not extend the tax on money at interest, mortgages, etc., to corporations, we are not prepared to say that for such reason it violates the constitution.  The Act is a supplement to the Act of 7th June, 1879, P. L., 112, by the fourth section of which a tax is imposed upon the capital stock of "every company or association whatever, now or hereafter incorporated by or under any law of this Commonwealth, or now or hereafter incorporated by any other state or territory of the United States, or foreign government, and doing business in this Commonwealth, or having capital employed in this Commonwealth in the name of any other person or corporation, association or associations, person or persons, or in any other manner, except foreign insurance companies, banks and savings institutions, shall be subject to and pay into the treasury of the Commonwealth, annually a tax to be computed as follows," etc. :

The tax, briefly stated, is three mills on the dollar of the appraised value of the capital stock of such corporations as declare either no dividends or dividends of less than six per cent.; and on corporations which pay a dividend of six per cent. or over one half mill on the capital stock for each one per centum of such dividend ; and where profits are made and not divided, but added to the sinking fund of such corporation, the like tax is imposed.

The Act contains other provisions for taxing banks, insurance companies, limited partnerships, etc., which we need not specifically refer to.

We have, therefore, by virtue of the provisions of the Act of 1879, a tax on the capital stock of corporations, the minimum of which is three mills on the dollar, the exact amount

2 AMERMAN—23

which the Act of 1885 imposes on mortgages, moneys at interest and moneyed capital in the hands of individuals. It has been repeatedly decided in this state and is settled law, that a tax upon the capital stock of a corporation is a tax upon its property and assets. It would be an affectation of learning to refer to the long line of cases asserting this doctrine; it is sufficient to refer to Commonwealth *v.* Standard Oil Company, where many of the authorities are collected: see 101 Penn. St. Rep., 119. The Act of 1885 being a supplement to the Act of 1879, the two Acts must be read together, and thus read we have in the one a tax of three mills on mortgages, etc., in the hands of individual citizens, and what is practically and legally, although not in name, a similar tax upon the same class of subjects in the hands of corporations. Wherein then is the lack of uniformity, and wherein has the legislature made a discrimination in favor of corporations as against individual citizens? If there is discrimination at all it is against corporations, as their tax may amount to six mills or more, according to the amount of the dividends declared. The 17th section of the Act of 1879 taxed mortgages and moneys at interest owned by individual citizens at the rate of four mills, and the principal objects of the Act of 1885 would seem to be to reduce the rate to three mills and to provide more efficient machinery for the assessment and collection of this tax. In fact the efficiency of this machinery has probably more to do with the opposition to the Act of 1885 than any supposed doubt of its constitutionality.

While a different mode of assessing taxation is adopted in dealing with the tax on corporations from that of taxing money in the hands of individuals, the result is substantially the same. Were the tax of 1885 on mortgages extended to corporations, the result would be double taxation, which, while not beyond the powers of the legislature, is not to be presumed in the absence of a clear intent to impose it. The case may be illustrated thus: We will suppose the capital stock of a trust company or other corporation to consist of $1,000,000, and that this amount has been invested in mortgages or other interest bearing securities. The $1,000,000 of capital stock is taxed by the Act of 1879 at three mills, and more if dividends in excess of six per cent. are earned. If now, the Act of 1885 imposes a tax of three mills upon the $1,000,000 of securities, it is obvious we have a case of double taxation. The capital stock is nothing; a myth; a mere name, excepting in so far as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock. Hence it is that the courts have long since declared

that a tax upon the capital stock of a corporation is a tax upon the assets and property of such corporation.

We do not think the Act of 1885 is unconstitutional, because it does not impose the tax on mortgages upon corporations. The proviso in the first section exempting building associations from the operation of the act is harmless, because said section does not, and was not intended to apply to corporations of any description. If there really was an exemption of such corporations, it would be void under the constitution, for the legislature can only exempt from taxation such property as that instrument authorizes it to exempt.

The exception of "notes or bills for work or labor done" is clearly a violation of the IXth Article of the Constitution. This belongs to a species of class legislation that has become very common, more common than commendable, the object of which is to favor a particular class at the expense of the rest of the community. So far as such legislation affects the question of taxation the constitution has put an end to it. There can be no more of it. Nor should there be. The constitution protects all classes alike; the poor and the rich equally enjoy its benefits, and all must share the burden which it imposes. However popular such legislation may be, it cannot be sustained under our present constitution.

But for this vice we are not required to declare the Act of 1885 void. The second section of Article IX. of the Constitution provides: "All laws exempting property from taxation, other than the property above enumerated, shall be void." The exception of "notes or bills for work or labor done" is void, under this provision, and drops out of the Act of 1885. The exception falls, but the Act stands. It will be the duty of the assessors to assess and return such bills or notes the same as other moneyed securities in the hands of individuals.

Nor do we think the case is affected by the 20th section of this Act, which repeals taxes heretofore laid on manufacturing corporations by the revenue laws. Even if this section amounted to an unlawful exemption from taxation, under the principle already referred to, the exemption would fall, and leave the balance of the Act in full force. The Act is complete without this section. As the constitutionality of the Act does not depend upon the validity of section 20, we do not propose to discuss the effect of the repeal of the tax on this class of corporations. It will be time enough to discuss it when a case arises where the question is distinctly made.

We have some trouble with the ninth section of the Act. It provides, as before stated, that when no return is made under the sixth and seventh sections, the assessor shall make return for such taxable person, "estimating the amount from

[Appeal of Fox and Wife.]

the best information at his command," to which estimated return the proper county commissioners or boards of revision shall add fifty per centum, and the aggregate amount so obtained shall be the basis for taxation.

We have no doubt of the power of the legislature to impose penalties for the non-payment of taxes. Such penalties are usually in the form of an increased per centage for the delay, or interest at a fixed rate. When so imposed, it is a penalty for withholding from the state a sum of money, the amount of which has been precisely ascertained, and the day of payment fixed by law. It may also be conceded that the legislature may impose a penalty upon the taxpayer who improperly withholds information which the state is entitled to have as to the condition or extent of his estate.

This provision in the Act of 1885 is an exercise of the taxing power. The tax on mortgages imposed by the Act of 1879 had never produced the amount of revenue which it might and ought to have done, for the reason that it was constantly and persistently evaded. Occasionally an honest man would make an honest return and pay an honest tax. But it is well known that full and fair returns were the exception rather than the rule, while many persons possessed of considerable estates liable to this tax escaped it altogether. The machinery provided for its assessment and collection, as before observed, was inadequate. The Act of 1885 provided such machinery; that it was effective we may fairly infer from the extent and character of the opposition to it. Taxation is never popular, and the Act of 1885 has received its full share of criticism; but the plain object of this particular provision of the Act was to make people honest and keep them so. It was intended to compel each taxpayer to disclose to the assessor the full extent of his personal estate, and to avoid the unequal burdens which had been laid upon the shoulders of some person by the neglect of others to return the full amount of their property. No legal objection can be made to this. If the state has the right to tax moneys at interest in the hands of her citizens, and this cannot be denied, she has the right to know to what extent each citizen holds such property. In the exercise of this right she has the power, and it is a part of the taxing power, to require each taxpayer to make known to the assessor the extent of his or her property of this description. She has the further right to punish the failure to make such return by the imposition of a penalty, or otherwise, as may best secure the object to be attained. These powers must be conceded. I have never heard them questioned, and without them the taxing power of the state would be no power at all. It would be a mere privilege.

[Appeal of Fox and Wife.]

The exercise of such power in this instance cannot be denied to the state, unless it clearly conflicts with some constitutional provision. If it is a matter of doubt, such doubt must be resolved in favor of the Act.

It is to be observed, in the first place, that the provisions of the ninth section apply only to taxpayers who neglect or refuse to make a proper return. They are by their own act in default, and are *primâ facie* attempting to avoid their share of the public burdens. Now, what hardship does the Act impose upon them for their default, or what penalty does it inflict that is unjust? In the first place, the assessor is obliged to make a return for them, from the best information at his command. This means that the assessor shall inquire from such persons as he may reasonably suppose to have information, as to the extent of the defaulting taxpayer's estate. Surely this is no hardship upon any one but the assessor. Estimating the amount of the property in this manner, the assessor returns such amount to the proper commissioners or returning boards, who are required to add fifty per centum thereto, and the amount so increased stands as the assessment. The state imposes this fifty per centum upon the taxpayer as a punishment for his default in not making the return required by law. If no appeal were allowed to the action of the commissioners in adding this penalty, it would be a serious question whether this Act could be sustained. It is one of the fundamental principles of English and American law that no man can be condemned in his person or property without a hearing. But the Act expressly provides that the taxpayer may, on or before the day fixed for appeals, go before the commissioners or board of revision and present his reasons, under oath, for his failure to make return, which, if satisfactory to the commissioners or board of revision, they shall substitute the taxpayer's return for that of the assessor, to have the like effect as if no failure had occurred.

It will thus be seen that the taxpayer holds the key of the position in his own hands, and can relieve himself from the consequences of his own contumacy by coming forward and being honest.

It cannot be truly said that this provision is not "uniform," whether we regard it as a penalty or an assessment. There is no lack of uniformity in the law; if any exists, it grows out of its application to particular cases. The assessments are increased at the uniform rate of fifty per centum. That it will produce exact uniformity in its results is not contended; but this flows not from any fault of the law, but from the neglect or refusal of the taxpayer to make the return. The

inequality being thus the direct result of his own act, the tax-payer has no standing to complain of it.

The right of the legislature to provide for such an increase of the assessment in the case of the refusal of a taxpayer to comply with the law in the matter of the return of his property to the assessor, has been recognized in several of our sister states. The latest case to which my attention has been called is that of Newell *v.* Town of Whittingham, Eastern Reporter, vol. 3, p. 649. This case was decided last January by the Supreme Court of Vermont. The statute of that state directs the "listers," whose duties correspond with those of our assessors, in all cases where a taxpayer wilfully omits to return, under oath, a complete inventory of his property, to ascertain the amount of the taxpayer's taxable property, appraise the same, and double the sum so obtained as a basis for the delinquent list. In this case the taxpayer made a return underneath, "to the best of his knowledge and belief." The form of oath was held not to be a compliance with the law, and the assessment 'was sustained. This was an admittedly hard case, as it was conceded the taxpayer had made an honest return, and refused to take a more positive form of oath by reason of a tender conscience, yet we do not find throughout the case, not even in the opinion of the dissenting judge, so much as a hint that any one doubted the validity of the Act.

By the statutes of the State of California, the penalty for wilfully concealing, removing, transferring or misrepresenting property by the owner or agent thereof, to evade taxation, is an assessment of it at ten times its value, or less. The validity of this Act was recognized in Biddle *v.* Oaks, 59 Cal., 94, where it was held, under another section of the Code, that property which had escaped assessment one year might be doubly assessed the next year.

In Butler *v.* Bailey, 2 Bay's (S. C.) Rep., 244, it was held that when a man does not make a return of his taxable property agreeably to the general Tax Act, he is liable to be doubly taxed, and his estate is liable for the whole of the double tax.

In New Jersey, by the Act of 1862, it was provided that any person who shall refuse to be sworn or affirmed by the assessor touching his taxable property, shall be subject to a penalty of five hundred dollars, and shall be deprived of any right to appeal from any tax for which he may be assessed by such assessor. This Act was sustained in The State *v.* Apgar, 2 Vroom, 358.

In Massachusetts, by General Statutes, c. 11, § 46, it is enacted: "When the assessors of a city or town have given

notice to the inhabitants thereof to bring in true lists of all their polls and estates not exempt from taxation, in accordance with the provisions of the twenty-second section of the eleventh chapter of the General Statutes, they shall not afterwards abate any part of the tax assessed on personal estate to any person who did not bring in such list within the specified time therefor in such notice, unless such tax exceeds by more than *fifty per centum* the amount which would have been assessed to that person on personal estate if he had seasonably brought in said list; and if said tax exceeds by more than *fifty per centum* the said amount, the abatement shall be only of the excess above the said *fifty per centum;* provided, however, that this Act shall not affect any person who can show a reasonable excuse for not seasonably bringing in said list." This was enforced by the Supreme Judicial Court in City of Charlestown *v.* County Commissioners of Middlesex, 101 Mass., 87.

In Lincoln *v.* The City of Worcester, 8 Cushing, 63, it was said by Chief Justice SHAW that "perhaps it is true that it is not made the duty of the taxpayer to bring in a list, but it is made a condition precedent (Rev. St., c. 7, § 40), without which he cannot have the remedies provided for him by law. Section 23 provides, that if any person shall not have brought in such list, the assessors shall ascertain, as nearly as possible, the particulars of his personal and real estate, and make an estimate thereof at its just value, according to their best information and belief, and their estimate, by § 24, shall be conclusive. The effect of the statute, therefore, is, that a person may, at his option, decline giving in his list, and leave the assessors to ascertain the particulars; but if he does so, he tacitly submits himself to their valuation and assessment, and of necessity waives all those exceptions which he could take only on condition of having given in a list. He submits himself to what is called, in some of the earlier statutes (Anc. Chart., 70–73), the doom of the assessors." See also Otis Company *v.* Inhabitants of Ware, 8 Gray, 509.

I am not aware of any decision of this court which is in conflict with those cited, and, in the face of so much respectable authority, we are not disposed to strike down the power of our state to impose this penalty, and thus cripple it in the assessment and collection of its revenue. Indeed, we have no right to do so, unless it is made to appear that the exercise of such power is a clear violation of the constitution. This has not been done.

Criticism has been made upon other portions of the Act relating more especially to the mode of its execution. While some of them seem harsh and of a character to be offensive to

the taxpayer who does not want to pay his tax, they do not come within the range of this discussion. Such portions of it as are objectionable upon reasonable grounds, the people can, and probably will, correct through their representatives. After a most careful and patient examination of the Act, we are unable to see such inequality of taxation, such lack of uniformity as would justify us in striking it down as a whole upon constitutional grounds. While we endeavor to hew to the line in every instance of a palpable violation of that instrument, it would require a clear case to justify us in setting aside a revenue law of the Commonwealth, and thus throwing the financial affairs of the state into confusion.

Our entire revenue system needs to be re-moulded in accordance with the new constitution. It has been for many years a disjointed system, subjected to frequent and arbitrary changes, in many instances loosely and obscurely worded, making its construction and enforcements matters of no slight difficulty. To re-cast it now in entire harmony with the organic law is a serious matter. It will require the ripest experience and the highest wisdom. Now that the attention of the legislature has been called to it, we have no doubt the wisdom of that body will prove equal to the emergency.

The decree is affirmed, and the appeal dismissed at the cost of the appellants.

MERCUR, C. J., dissented.