## Commonwealth v. Corner Realty Co. et al.

*Hirschwald, Goff & Rubin,* for plaintiff.

*Saul, Ewing, Remick & Saul* and *Scholl & Dougherty,* for defendants.

Bok, P. J., May 25, 1942.—The question is whether a lien judgment for State taxes should be opened when that part of it which represents interest was never settled.

We entered such a judgment for $17,594.01, of which $5,433.86 represents taxes for 1929, 1930, and 1931 settled between July 9 and December 28, 1931; $5,658.34 represents taxes for 1931, 1932, and 1933 settled by estimate on September 18, 1933; and $6,602.81 represents interest on $10,991.20 from the respective dates of settlement to November 16, 1937, when the Commonwealth filed its certificate of lien and issued a sci. fa. In the interim, the property was foreclosed by proceedings started on July 13, 1933; it was sold at sheriff's sale on September 16, 1933; a sheriff's deed was dated September 23rd and recorded on October 6, 1933.

A case stated was prepared at trial. On April 4, 1941, we gave judgment for the Commonwealth and no appeal was taken. The case is reported in Commonwealth v. Corner Realty Co., 41 D. & C. 236.

The Pennsylvania Company, defendant, now petitions us to open judgment, and the Commonwealth has filed its answer. Petitioner admits that the interest is due and owing, but contends that since it was never settled it should not be part of the Commonwealth's lien. The answer takes the position that such a settlement is impracticable and that interest is an inherent part of a settlement for taxes and becomes a lien along with the amount of taxes. It is admitted that the interest was never separately settled.

A settlement is defined in Commonwealth v. New York, Pennsylvania & Ohio Railroad Co., 188 Pa. 169 (1898), as follows (p. 178) :

"An 'account' or 'settlement' is a physical, tangible thing, a paper with figures and writing upon it, signed by the auditor general and state treasurer, indorsed, copied into a ledger and filed away in its appropriate place."

The authority for the lien is in section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1401:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, association, or person, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, and whenever the franchises or property of a corporation, association, or person, shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts, due the Commonwealth, shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, association, or person . . ."

At common law an account settled by the Auditor General gave the Commonwealth no lien: In re Wilson, Commonwealth's Appeal, 4 Pa. 164 (1846), cited in Commonwealth v. Central Realty Co. et al., 338 Pa. 172 (1940). Whatever lien the Commonwealth has comes from the legislature, and the construction must be a strict one, being in derogation of the common law.

It is our view that the word "settled" at the beginning of section 1401, above set forth, refers not alone to "public accounts" but to the preceding items as well, namely, State taxes, unpaid bonus, interest, and penalties. Any doubt of this should be removed by reading the title of the Act of June 15, 1911, P. L. 955, which contains the some language. It reads "An act making State taxes, unpaid bonus, interest, penalties, and all public accounts, a first lien upon the franchise and property of corporations, companies, associations, joint-stock associations, and limited partnerships against which the same may be settled . . ."

The Act of 1911 contains this language for the first time. The Act of March 30, 1811, 5 Sm. L. 228, sec. XII, makes "the amount or balance of every account settled" a lien. The Act of June 1, 1889, P. L. 420, sec. 31, makes "all taxes imposed by this act" a lien.

We do not believe that interest becomes part of the lien in the same way that interest is said to follow a judgment. No case has been decided on the point at issue under any of the acts cited. The nearest thing to it is an obiter dictum by Mr. Justice Barnes in Commonwealth v. Southern Pennsylvania Bus Co., 339 Pa. 521 (1940), where he says (p. 531):

"It is difficult to understand in what manner the provision for interest violates the requirement of due process. Before the charge can be imposed there must be a settlement of the deficiency, *and of the interest.*" (Italics supplied).

It is our conclusion that interest does not become part of the lien of settled taxes unless the interest is also

settled. It was called to our attention at bar that separate forms are provided for the settlement of interest.

It should be noted that the Commonwealth could have settled the interest on the 1931 settlements when it settled the 1931-1933 taxes on September 18, 1933, but it didn't. Our conclusion may make it difficult for the Commonwealth and compel it to be watchful for the foreclosure of property against which it already has a lien for settled taxes, but that is the legislature's affair and not ours.

The Commonwealth's brief does not try to argue away the language of section 1401 of The Fiscal Code but attacks the situation obliquely. It points to sections 806($a$) and 805($b$) of the Act of June 1, 1931, P. L. 318, sec. 1 (which amends The Fiscal Code of 1929), which say that taxes and foreign bonus settlements are due and payable 60 days after settlement, and that interest shall be charged from such time. The argument is made that in view of these provisions interest could not possibly be settled. We fail to see the connection. Since we are considering only interest accruing after a tax settlement, it makes no difference in theory whether the interest begins to run one day or 61 days after settlement. And when the Commonwealth complains that the construction here decided upon would deprive it of all interest in this case, the answer is that this is only because the property is insolvent and there is nothing much for creditors. Our ruling simply deprives the Commonwealth of its position as a lien creditor and makes it a general creditor, but its claim for interest is as good as it ever was.

It is difficult to find even traces of policy in the various acts, but there are a few straws with which to meet the Commonwealth's argument that interest is inherent in a settlement. We have already mentioned the title to the Act of 1911. By section 2 of the Act of June 7, 1879, P. L. 112, if the authorities were not satisfied with a company's appraisal of its capital stock they

were authorized to make their own and "to settle an account on the valuation so by them made for the taxes, penalties and interest due"; and in section 13 of the same act it is provided that "in the settlement" made by the authorities interest should be charged from 30 days after the taxes become due until the time of their settlement.

In section 804 of The Fiscal Code of 1929 it is twice provided, if a company fails to make a report on capital stock or corporate loans, the authorities may make an estimated return "and settle an account for taxes, penalties, and interest". To the same effect is section 801 (*d*) of The Fiscal Code of 1929, and section 801 (*d*) of the Act of February 2, 1937, P. L. 3, 72 PS §202. And again, with respect to the anthracite tonnage tax in section 808 of The Fiscal Code.

While it is true that these sections contemplate interest which has accrued before a tax settlement, they indicate that interest is to be treated separately. It is entirely conceivable that, with respect to interest accruing after a tax settlement, the legislature felt that, should a property become insolvent after settlement, the rights of all creditors should be fixed as of that time and that the lien rights of the Commonwealth should be as clearly discernible from the public records as those of any other lien creditor. It must be noted in this connection that the Commonwealth apparently did keep its eyes open for a foreclosure in the case before us and did settle the 1931, 1932, and 1933 taxes by estimate between the time foreclosure proceedings were begun and the time the sheriff's deed was delivered and recorded: it could just as easily have settled the interest on the 1931 settlements at the same time and made it a lien too.

It might also be observed that the Commonwealth's right to interest is different from that of the ordinary citizen. The Commonwealth is not bound by the laws of usury and can make the interest rate what it pleases.

The cases often speak of interest charged by the Commonwealth as a device to enforce the payment of accounts due to it, taxes being as unpopular as they are—that is, as a penalty: Commonwealth v. Southern Pennsylvania Bus Co., supra; Fox's Appeal, 112 Pa. 337 (1886).

The law is most unsatisfactorily drawn on this point, so much so that there is an interpretation of section 1401, contra this opinion, which in itself is logical but destroys the meaning of section 1402. At the beginning of section 1401 it is provided that "All State taxes imposed . . . and unpaid bonus, interest, penalties, and all public accounts settled . . .", etc., shall be a first lien. A little farther down, when speaking of a judicial sale, it is provided that ". . . all taxes, interest, bonus, penalties, and public accounts, due the Commonwealth, shall first be allowed and paid out of the proceeds . . ." before any other lien. Not "*such* taxes", etc., and not "all taxes, etc., *settled*". This might be held to set up a distinction between taxes, etc., which relate to solvent properties and must be settled in order to be paid first, and taxes, etc., which relate to properties under judicial sale and need not be settled in order to be paid first. Yet in section 1402 it is provided that in cases of judicial sale the Department of Revenue must, after receiving notice of the sale, furnish the sheriff a certified copy of "all tax, bonus, or other public accounts *settlements* on file in the department, as liens against such corporations," etc. To what point, if the taxes, etc. were to be paid first, whether settled or not? To add to the confusion, section 1402 was amended by the Act of February 2, 1937, P. L. 3, by removing the word "settlements", and it may well be that the distinction above referred to is valid now. But this case arose before the Act of 1937 and must be decided under the law as it was, with the word "settlements" in. The distinction referred to in section 1401 would make the old section 1402 meaningless, which is to be avoided, since under

our construction the two can be made to work in harmony.

To support its argument that interest admittedly due is inherently a lien because the settled tax is a lien, the Commonwealth cites three cases by way of analogy. One is Commonwealth v. Central Realty Co. et al., supra. There the tax had been settled in 1915 for $826.92. The Commonwealth did not try to collect until 1937, when the interest raised the total claim to about $3300. The case was sent back for trial on the issue of presumption of payment, but everyone in the case, including Mr. Justice Maxey, who wrote the opinion, appeared to assume that the verdict would have to be $3300 or nothing. The point we are considering was not raised or considered there, and it is quite possible that it never occurred to anybody, including Mr. Justice Maxey.

In Goodwin Gas Stove & Meter Co.'s Assigned Estate, 166 Pa. 296 (1895), the question was whether or not the Commonwealth lost its lien against its debtor after he made a later assignment for the benefit of creditors. Our point was not involved and couldn't be, since the case arose before the Act of 1911, when the language we are construing appeared in the law for the first time. And again, the fact that the lower court and the Supreme Court allowed recovery of both tax and interest does not mean that either of them was necessarily aware of the point.

In Appeal of the City of Titusville, 108 Pa. 600 (1885), the question was whether or not the Commonwealth's lien included extra percentages of the tax levied as a penalty for nonpayment. The court held it did. This case also arose before the Act of 1911, and the statement by the court that the added tax was in the nature of interest or damages rather than a penalty is nothing more than declaratory of the law at that time, provided Mr. Justice Sterrett was using precise language. This is perhaps doubtful, in view of his say-

ing that it made no difference how the extra percentages were regarded.

The Commonwealth also contends that we have no right to open judgment because it is adversary and three terms of court have elapsed since entry. It concedes, however, that we may do so for "impelling equitable grounds". We have not been advised of any intervening rights or of any change in the situation that would make a correction of an erroneous judgment inequitable to anybody. Aside from any question of mistake of law or fact, the fact remains that we have a judgment that is erroneous in law, and we believe that is ground enough for any court to put it right. We must even share the blame for not noticing the point now labored ourselves. And it is our view that the sovereign has less reason than its citizens to profit by such an error. The tax laws have no spirit and many letters.

Defendant asks us to open judgment, to reduce it to $10,991.01, and in some manner to direct the Commonwealth to resettle the 1933 estimated settlement on the basis of actual calculations. We do not feel free to do any of these things. We have nothing whatever to do with estimated settlements and the substitution of actual ones in their place: Stratford v. Franklin Paper Mills Co., 257 Pa. 163 (1917). Defendant must look to whatever remedies it has under The Fiscal Code on this subject: we make no comment on it as it is not within our jurisdiction.

Nor can we open the judgment generally, for defendant admits that the interest of $6,602.81 is due and owing, and admits that the Commonwealth's lien, on the basis of the figures settled and presented to us, is for $10,991.20. This is neither the time nor place to revise the latter figure, and it should be observed that there was ample time in which defendant could have seen to it.

We will, however, correct the judgment by molding it.

### Order

And now, to wit, May 25, 1942, it is ordered and decreed that of the amount of judgment heretofore entered by us on April 4, 1941, the sum of $10,991.20 constitutes a lien for settled taxes against the real estate described in the sci. fa. sur State tax, and the balance, or $6,602.81, is unsettled interest on $10,991.20 and does not constitute a lien against the real estate described in the sci. fa. sur State tax.