Amidon *v.* Kane.
Tilghman *v.* Kane.
Concerned Taxpayers of Allegheny County
*v.* Kane.

Argued May 17, 1971, before President Judge Bow-
man, and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Manderino, Mencer and Rogers.

*Sidney M. DeAngelis,* with him *Bean, DeAngelis, Kaufman & Giangiulio,* for plaintiff Tilghman.

*Perrin C. Hamilton,* with him *Walter T. Darmopray* and *Hamilton, Darmopray, Malloy & Milner,* for plaintiffs Amidon et al.

*Robert E. Wayman,* with him *Wayman, Irvin, Trushel & McAuley,* for plaintiffs Concerned Taxpayers of Allegheny County et al.

*Israel Packel,* Special Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for the defendant Commonwealth of Pennsylvania.

*William H. Smith,* Chief Counsel, with him *Frank P. Lawley, Jr.,* Deputy Counsel, for defendant Robert P. Casey, Auditor General.

Opinion by Judge Wilkinson, May 20, 1971:

These three cases are all actions in Equity instituted in this Court to test the constitutionality of Arti-

cle III of the Tax Reform Code of 1971, adopted March 4, 1971, Act No. 2, 72 P.S. 7107 et seq., P.S. Pennsylvania Legislative Service, session of 1971, P. 5, et seq.

We can dispose of the *Tilghman* case (255 Commonwealth Docket 1971) unanimously and with dispatch. The only attack made by the plaintiffs in that case, although the same ground is used inter alia in the other cases, on the constitutionality of Article III of the Tax Reform Code of 1971, is that it was passed by the Legislature without the benefit of a budget submitted by the Governor. Section 12 of Article VIII of the Pennsylvania Constitution provides that the Governor shall submit annually to the General Assembly "at a time set by law" a balanced operating budget. It is specifically provided "if estimated revenues and available surplus are less than proposed expenditures, the Governor shall recommend specific additional sources of revenue sufficient to pay the deficiency of the estimated revenue to be derived from each source". This is a new provision in the Constitution and counsel agree it presents a question of first impression. Although the question is of first impression, it is not a difficult one to resolve. First, the Constitution refers to the duty of the Governor to perform in this regard "at the times set by law". The time set in Section 602 of the Administrative Code, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. 222 is "as soon as possible after the organization of the General Assembly". There is nothing in this record to show that this provision of the Constitution and the Act of Assembly was not complied with by the Governor. But, be that as it may, counsel for plaintiffs do not point to any provision in the Constitution which limits the General Assembly's power to adopt tax programs until the Governor has submitted his budget. Indeed, there is a constitutional limitation on the authority of the Legislature in mak-

ing appropriations. This limitation is that the appropriation may not exceed "the actual estimated revenues and surplus available in the same fiscal year". *See* Section 13(a) of Article VIII. Manifestly, had the framers of the Constitution intended any such similar limitation to apply to the authority to pass new taxes being conditioned on the submission of a budget by the Governor, they would have so provided.

The issues raised by the *Amidon* and *Concerned Taxpayers* cases (260 and 275 Commonwealth Docket 1971) are much more substantial, but the majority of the Court must dispose of them in the same manner. One attack made on Article III of the Tax Reform Code of 1971 is that in adopting the definition of "taxable income" to mean the same as defined in the Internal Revenue Code, the General Assembly has made an unauthorized delegation of authority to the Congress which adopts and amends the Internal Revenue Code from time to time. In theory and logic, this argument may have had merit at one time. It may have merit in the future if Congress amends the Internal Revenue Code to redefine taxable income and the Pennsylvania Legislature does not affirmatively amend its Act to either adopt the new definition or take such other action as is appropriate. Such a case is not before us. Any doubt as to the constitutionality of this provision has been put to rest by the Supreme Court of Pennsylvania in *Commonwealth v. Curtis Publishing Co.*, 363 Pa. 299, 69 A. 2d 410 (1949), and *Commonwealth v. Warner Bros. Theatre, Inc.*, 345 Pa. 270, 27 A. 2d 62 (1942).

Another attack is made on the constitutionality of Article III of the Tax Reform Code of 1971 on the basis that the awarding of the vanishing tax credit to "low income" individuals and the credit given for thirty percent (30%) of local taxes other than taxes on

real estate, realty transfers or amusements, constitutes unconstitutional discrimination amounting to non-uniformity. We cannot agree. The Legislature is given wide latitude in classification with regard to tax matters: "In the light of these considerations we can only hold, as already stated, that, so far as concerns the classes into which articles may be arranged for purposes of taxation, the matter is one for the legislature and not for the courts; and the latter not only have no duty to classify but they are and should be forbidden to interfere with the legislative classification unless they can say with certainty that it is purely illusory, clearly intended as an evasion of the Constitution." *Heisler v. Thomas Colliery Co.,* 274 Pa. 448, 459, 118 A. 394 (1922). See also *Philadelphia v. Depuy,* 431 Pa. 276, 244 A. 2d 741 (1968), *Crosson et al. v. Downingtown Area School District,* 440 Pa. 468, 270 A. 2d 377 (1970) (upholding an exemption for minors on the basis of the likelihood of low income to minors as being a basis for separate classification). The legislative authority to classify for taxation is given a wider latitude than it is in the area of regulatory legislation. *See Commonwealth v. Life Assurance Co. of Pennsylvania,* 419 Pa. 370, 214 A. 2d 209 (1965). The same principle obtains in the application of the Federal Constitution to the states. *See Chicago, Burlington and Quincy R. Co. v. McQuire,* 219 U.S. 549 (1911).[1]

There remains the very substantial question of whether Article III of the Tax Reform Code of 1971 violates Article VIII, Section 1, of the Pennsylvania Constitution for lack of uniformity: "All taxes shall be

---

[1] At the risk of inappropriately injecting humor into a situation that to many would be more appropriate for tears than laughter, it has been observed that the logic of the classification for a tax base by the legislature follows the reasoning of an Irishman at Donnybrook Fair—when you see a head, you hit it.

uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." There is no longer any doubt that the uniformity clause of the Pennsylvania Constitution applies to a tax on income, *Kelley v. Kalodner*, 320 Pa. 180, 181 A. 598 (1935); or an occupation and occupational privilege tax, *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 196 A. 2d, 664 (1964). There can be little if any doubt but for the constitutional requirement of uniformity the Legislature would certainly have considered and perhaps have adopted a graduated income tax in the classic form. The question here at issue is whether the Legislature has, in effect, done the same thing with the use of the federal base which "builds in" many deductions and exemptions which apply to some and not to others as well as including the provision for the vanishing tax credit and the partial credit for the payment of certain local taxes. We think not.

The legislative intent is expressly set forth in Section 301 of the Act: "The Legislature, in imposing a flat rate tax on income defined in this article, hereby declares its legislative intent and policy to provide a fair and practical method of taxation and to effectuate an income tax which shall constitutionally conform to the uniformity provisions of section 1, of Article VIII, of the Constitution, by utilizing and uniformly applying in this article those terms, definitions, classifications and other provisions of the Federal Internal Revenue Code of 1954, as amended, as they relate to the Federal Income Tax in individuals, being the same code which the General Assembly has heretofore employed in the Pennsylvania 'Corporate Net Income Tax' and 'Corporation Income Tax' acts relating to the imposition of income taxes on corporations." There is no testimony in this record that would show that

the Legislature, if the classifications are reasonable, has not accomplished this intent. Indeed, neither is there any evidence that the classifications are not reasonable.

In drafting this legislation, the Legislature appears to have followed the guidelines set forth in *Turco Paint and Varnish v. Kalodner*, 320 Pa. 421, 184 A. 2d 37 (1936), when the Supreme Court of Pennsylvania approved a corporate net income tax based on the corporation's net income as reported to the federal government. The plaintiffs attempt to distinguish this case from the instant case in that the *Turco Paint* case was a privilege tax. We do not concur that this constitutes a valid distinction but if it did, the Legislature has followed that decision with such meticulous care that it declares this tax to be on the privilege of "receiving, earning or otherwise acquiring income." In our opinion, this Court, approaching the case using the *Turco Paint* case as its frame of reference, can only conclude that Article III of the Tax Reform Code of 1971 conforms and complies with the uniformity requirements of the Pennsylvania Constitution.

Finally, it is argued that it constitutes unconstitutional non-uniformity to give credit for local taxes paid in years after calendar 1971 limited to an amount not to exceed thirty percent (30%) of the tax paid in 1971. Suffice it to say that if this provision is not amended, this aspect can be considered in a proper case contesting the provision in years subsequent to 1971. It certainly is not at issue at this time.

Although we think that the case will stand by itself, if the validity of the Act needs any underpinning, it is more than amply provided by the well-established principles clearly restated by the Supreme Court of Pennsylvania as recently as January 7th of this year when, in *Wanamaker v. Philadelphia School District*

*et al.,* 441 Pa. 567, 274 A. 2d 524 (1971), it stated: "The challengers of the constitutionality of state or local taxation bear a heavy burden in their efforts to overturn such legislation." In our opinion, the challengers here have not met their burden. In the future, in some particular case, with a record before it of the tax application in that case, it may be that a specific clause in this taxing statute would need careful examination by a court and it might ultimately be determined that in that instance uniformity, although intended, was not achieved. There is nothing in the record of this case requiring us to come to such a conclusion.

The complaints are dismissed.

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

Since adoption of the Pennsylvania Constitution of 1874 it has been and remains the fundamental law of this Commonwealth that all taxes shall be uniform upon the same class of subjects.

Attempts to change this fundamental social-political doctrine in favor of a non-uniform concept were rejected by the voters in referendum in 1913, 1928 and 1937. Recognizing this repeatedly expressed mandate of the people of Pennsylvania, those who recently sought extensive revision of our Constitution wisely excluded this subject from the scope of the Constitutional Convention of 1967-68; the convention was approved by referendum but interdicted to leave the uniformity principle unchanged. Hence, the Pennsylvania Constitution of 1968 retains the same provisions.

This repeated expression of the will of the people upon a subject which goes to the very essence of the legislative power to tax should not be "frittered away by judicial construction", *Appeal of Fox and Wife,* 112 Pa. 337, 352, 4 A. 149, 153 (1886), nor should

"semantic sleight of hand" give constitutional sanction to that which is clearly palpably and plainly unconstitutional, *Wanamaker v. Philadelphia School District et al.*, 441 Pa. 567, 581, 274 A. 2d 524, 531 (1971) (dissenting opinion of Justice ROBERTS).

Equally inappropriate for judicial consideration is a socio-political philosophy based upon the meaningful but at the same time undefined concept of ability to pay. "It has become a mere platitude to state, what has so often been proclaimed, that Courts are concerned, not with the wisdom of legislation, but with the right of the legislative body to enact it—not with *policy* but with *power*". *National Biscuit Company v. Philadelphia*, 374 Pa. 604, 608, 98 A. 2d 182, 184 (1953).

It is for us to decide whether the power to tax was constitutionally exercised by the General Assembly with respect to Article III of the Tax Reform Code of 1971.[1] It is not for us to decide that it was wise or unwise to so act or to be influenced in our decision by the fiscal problems that brought about its enactment or will follow if the enactment does not pass constitutional muster.

### UNIFORMITY—TAXABLE INCOME

Does uniformity in the rate of tax measured by an arbitrary definition of net income for the "privilege of receiving, earning or otherwise acquiring income from any source whatsoever",[2] meet the constitutional

---

[1] Act of March 4, 1971, P. L.     Act No. 2.

[2] Section 305, Tax Reform Code of 1971, *supra*, which provides: "Incidence and Rate.—For the privilege of receiving, earning or otherwise acquiring income from any source whatsoever, in the case of a resident individual, estate or trust of this Commonwealth, or from sources within this Commonwealth, in the case of a nonresident individual, estate or trust of this Commonwealth, there is levied and imposed an annual tax of THREE AND FIVE-TENTHS percent of the taxable income of the taxpayer."

mandate that all taxes shall be uniform upon the same class of subjects?

Article III of the Tax Reform Code of 1971, *supra,* characterizes the tax imposed in said article as a personal income tax and declares in Section 301 that the intent and policy of the Legislature is to impose a "flat rate tax on income defined in this article."

Apart from the question of whether an unlawful delegation of legislative authority is involved,[3] it would seem to make little difference on the question of uniformity whether the Legislature chose to adopt its own definition of net income or incorporated by reference the definition of taxable income as contained in the Internal Revenue Code. The question remains the same and cannot be answered by the simplistic syllogism that because all individual taxpayers pay a flat rate tax on a uniform base, uniformity is achieved.

It has been widely assumed that some concept of "net income" affords an acceptable classification not violative of the uniformity clause of our Constitution, and more specifically, that a Federal criteria of "net income" meets constitutional uniformity requirements. It is said that *Turco Paint & Varnish Company v. Kalodner et al.,* 320 Pa. 421, 184 A. 37 (1936), is authority for this proposition. In that case our Supreme Court sustained the constitutionality of a State tax upon corporate net income as returned to and ascertained by the Federal government against an attack on uniformity. "Plaintiff has not pointed to a single provision of the act which would demonstrate a legislative intent to impose a graded income tax. The rate used, 6%, is the same for all corporations. The tax base to which this rate is to be applied is also identical. It is the net income attributable to this State. It cer-

---

[3] *See Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942).

tainly should be axiomatic that the same impost when applied to the same subject matter does not make the tax graded simply because of the fact that one association, owning more of the particular taxable subject matter than another, pays, on this account, a greater sum total of tax. Where *different* rates are legislatively imposed on varying amounts or quantities of the *same* tax base, then you have a graded tax that lacks uniformity under our Constitution." *Turco Paint & Varnish Company v. Kalodner et al.,* 320 Pa. at 426, 184 A. at 40.

In my opinion, *Turco* is not controlling on the issue before us. As it was pointed out in *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942), the corporate net income tax is an excise tax imposed upon corporations for the privilege of doing business in Pennsylvania. In the instant case we have a personal income tax imposed upon individuals as stated in Section 305 of Article III "[f]or the privilege of receiving, earning or otherwise acquiring income from any source whatsoever. . . ."

I do not propose to seek out the nature of the tax imposed by Article III. Much of the confusion in our decisional law stems from such unnecessary distinctions and differences in terminology.[4] Nor would it be necessary in this case, because both sides agree that the uniformity clause is now considered applicable to all nature of taxes which are revenue measures. *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598 (1935); *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316, 196 A. 2d 664 (1964).

But even if one assumes that *Turco* stands for the general proposition that some concept of net income affords a constitutionally acceptable base for individ-

---

4 *See* Tanner, "Constitutional Limitations of the Taxing Power in Pennsylvania." 7 U. Pitt. L. Rev. 98 (1941).

ual income taxation as well as corporate net income taxation, our Supreme Court did not pass upon the issue, in terms of uniformity, of a need for a rational relationship between income and net income.

Having imposed a personal income tax upon resident individuals, estates and trusts (and nonresident individuals, estates and trusts with income sources within the Commonwealth), the Legislature then proceeds to levy the tax at a flat rate upon something less than income from whatever source derived. In this case the "something less than income" is "taxable income" as defined by the Internal Revenue Code with certain additions and subtractions as set forth in Section 302 (q). In common usage or by any recognized principles of accounting, there is a wide gap between income (or gross income) and "net income", but there is a rational relationship between the two in that the latter is determined by deducting reasonable expenses attributable to the production of "income" or "gross income".

However, the gap between income or gross income and taxable income, as defined by the Internal Revenue Code, bears no rational relationship whatsoever to the generation of what is commonly referred to as either earned or unearned income.

Although there are a myriad deductions from gross income under the Internal Revenue Code to reach taxable income (which, incidentally, many claim favor individuals most able to pay), those deductions allowed after determining "adjusted gross income" afford the most obvious examples of the absence of any rational relationship between income and taxable income by which the flat rate 3.5% tax levy is measured. These particular deductions are found in the Federal law (not hampered by uniformity requirements) for a host of reasons. Suffice it to say that personal exemptions and those for dependents, while meritorious in terms

of ability to pay, bear no rational relationship to a tax on net income.

By the Act of July 12, 1935, P. L. 970, the Legislature enacted an individual net income tax which imposed a tax at graduated rates upon net income as defined in the statute itself including both earned and unearned income. Additionally certain personal exemptions and dependency deductions were allowed.

.   In *Kelley v. Kalodner, supra,* our Supreme Court held the statute unconstitutional as violative of the uniformity clause in imposing a graduated rate. More importantly, however, as applicable to this case, it held that a personal exemption of $1,000, a head of family or married person deduction of $1,500 and a dependent deduction of $400 per dependent to reach net income was also violative of that constitutional proscription. As to this issue, "[t]here can be no doubt that these exemptions were inserted for the purpose of putting the burden of the tax upon those most able to bear it, but it results in taxing those whose income arise above a stated figure merely because the legislature believes their incomes are sufficiently great to be taxed. . . . 'A pretended classification that is based solely on the difference in quantity or precisely the same kind of property is necessarily unjust, arbitrary and illegal.'" 320 Pa. at 188-9, 181 A. at 602.

An examination of the provisions of the Act of 1935 discloses that the Legislature at that time chose to set forth in the statute itself definitions of income, net income, deductions, exemptions and the like rather than incorporate them by reference to the then existing provisions of the Internal Revenue Code. In doing so, however, except in specified areas, it simply employed the language found in the then existing provisions of the Internal Revenue Code.

In 1971, the Legislature chose the opposite approach to impose the same personal income tax upon

both earned and unearned income. Instead of borrowing the language of the current Internal Revenue Code, it simply incorporates selected provisions of that Code by reference and provides for certain additions and subtractions therefrom. To now say that a change in bill drafting technique or legislative sleight of hand makes constitutional the very provisions that *Kelley* declared unconstitutional is to superimpose semantic sleight of hand upon legislative sleight of hand.

Since *Kelley,* the Supreme Court on several occasions has spoken upon the subject of uniformity and personal income taxation. In 1938 the City of Philadelphia enacted a flat rate tax upon earned income and the net business profits of residents and nonresidents employed in or engaged in business in that City. It further provided that certain domestic workers, farm laborers and farmers were not to be included as taxpayers and all taxpayers were allowed a credit of $15.00 for prompt filing of a tax return. In *Butcher v. Philadelphia,* 333 Pa. 497, 6 A. 2d 298 (1938), by per curiam opinion, the Supreme Court declared: "Under the severability clause in the income tax ordinance . . . the majority, one Justice disagreeing, hold that the income tax ordinance is constitutional, *with all exemptions stricken out, including the credit for making and filing the return. . . ."* 333 Pa. at 498, 6 A. 2d at 298-9. (Emphasis added.)

In 1949 the City of Philadelphia extended its then existing wage and net profit tax to income from all sources thus converting the tax into a general income tax. The validity of the amendment was challenged in *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280 (1950). The basic issue was one of statutory authority. The court held that the amendment was not authorized by the enabling act; thus no constitutional issue

382

had to be faced. However, the court did comment by way of dictum upon the constitutional validity of the amendment insofar as it would have reached rent received from real estate. It was necessary for the court to hold that the tax upon income from property was upon the property itself (the *Kelley* case being cited as authority for the proposition) in order to reach its decision under the statutory issue. However, the court went on to say, assuming that such a tax (i.e., one reaching income derived from property) was authorized by the statute, it would nevertheless violate the uniformity clause in Art. IX, §1 of the Constitution. The basis of this conclusion was that such a tax would create an inequality of burden among land owners, some of whom rented and some of whom did not. In addition it was said that the classification of realty owners into two classes (those who occupy their dwelling houses and those who let them to tenants) would not be such a reasonable classification as would avoid an unconstitutional inequality of tax burden.

Although not specifically addressing itself to a personal income tax, the Supreme Court in *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 170, 87 A. 2d 480, 484 (1952) did comment upon uniformity as applicable to taxation of persons and property. "Uniformity requires substantial equality of tax burden: Com. v. Overholt & Co., Inc., 331 Pa. 182, 200 A. 849; Com. v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319; Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29. While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (Wilson v. Philadelphia, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a substantial degree *unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classifica-*

*tion, is prohibited*: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollock v. Farmers' Loan and Trust Co., 157 U.S. 429, 599. Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated. . . ." (Emphasis added.) Also *see Saulsbury v. Bethlehem Steel Company, supra.*

*Kelley,* and these other supporting decisions of the Supreme Court, in my opinion, are controlling of the issue before us and condemn as not meeting constitutional uniformity requirements the imposition of a personal income tax which directly or by indirection allows for exemptions or deductions not rationally related to the subject matter of the tax. To reach any other conclusion would and does judicially abrogate constitutional uniformity requirements so far as income taxation is concerned. I would, therefore, declare Article III of the Tax Reform Code of 1971 unconstitutional and sever it from the other provisions of the Code.

## UNIFORMITY—VANISHING TAX CREDITS

I concur with the majority which concludes that the vanishing tax credits (Section 319) are constitutional as being within the new provisions of the Pennsylvania Constitution of 1968 authorizing the Legislature to establish special classes or make special tax provisions for the poor, aged, infirm or disabled (Article VIII, Section 2ii).

I concur, however, solely for the reason that there is no evidence of record nor can it be demonstrated from the provisions themselves that our Constitution has clearly, plainly and palpably been violated. The presumption of constitutionality must therefore obtain.

This leaves open the question, in my opinion, whether these provisions could withstand a constitutional test supported by an evidentiary record. Do the provisions of Section 319 actually benefit and solely apply to any one or more of the groups authorized for special tax treatment? Is there a realistic relationship of the product of the application of the vanishing tax credits to a minimum standard of health and decency, and, if so, what is that standard? All these questions are unanswered but the fact that they are unanswered does not make Section 319 clearly unconstitutional.

Judge MENCER joins in this dissenting opinion and also files a separate dissenting opinion.

————

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Article VIII, §1, of the Pennsylvania Constitution specifically states that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax. . . ." In *Kelley v. Kalodner*, 320 Pa. 180, 181 A. 598 (1935), it was held that a statute levying an income tax from which certain individuals were exempted because their incomes did not exceed stated amounts was void, in that it was lacking in uniformity and violated the constitutional rule of uniformity. *See Banger's Appeal*, 109 Pa. 79 (1885); *Cope's Estate*, 191 Pa. 1, 43 A. 79 (1899). Likewise, in *Saulsbury v. Bethlehem Steel Company*, 413 Pa. 316, 196 A. 2d 664 (1964), it was held that the imposition of an occupational privilege tax upon each individual engaged in an occupation, when his gross earnings amounted to $600 or more during the taxable year, was unconstitutional because it lacked uniformity. It was reasoned that, if a tax is levied on a privilege, it must apply to all who share the privilege. Part of the class may not

be excused even though the legislative motive behind the excusing action is laudable.

The defendants would have us completely disregard the above cases and the legal reasoning that supports them on the assertion that this has all been changed by Article VIII, §2(b) (ii) of the Pennsylvania Constitution. This section provides, *inter alia,* that the General Assembly may, by law, establish as a class of subjects of taxation the property or privileges of persons who, due to poverty, are determined to be in need of tax exemption or of special tax provisions under uniform standards and qualifications. The General Assembly undoubtedly had this constitutional provision in mind when it placed section 319 in Article III of the Tax Reform Code of 1971. Act of March 4, 1971, P. L.    , No. 2, 72 P.S. §§7101 et seq., 1 Pa. Leg. Serv. '71, p. 5 et seq. Section 319 provides for what has become known as the vanishing tax credit. In accordance with a schedule under section 319, a class of taxpayers is entitled to claim a credit against the amount of tax which would otherwise be due under Article III of the Tax Reform Code of 1971. This is simply the forbidden graduated income tax in reverse. Although now in miniform, the majority's approval today invites for tomorrow an expanded schedule of vanishing tax credits. Further, the approval of this tax credit scheme allows by indirection the same elimination of certain taxpayers which our Supreme Court struck down in *Saulsbury v. Bethlehem Steel Company, supra.* Can it be unconstitutional to exclude persons from a tax who do not earn $600, as in Saulsbury, and yet be constitutional to exclude persons from a tax who do not earn $600 by allowing them a credit equal to the tax due? Have we become so sophisticated that we can achieve a graduated income tax result in the face of the constitutional mandate that all taxes be uniform?

Further, all computations of the vanishing tax credit are a percentage of "net taxable income". This term is not defined anywhere in the Act and it is anyone's guess what it includes or what it means. It is all well and good to speculate, as defendants' counsel did at oral argument, that it means "taxable income", but why is such speculation any more valid than that it means "net income" or "taxable income after subtracting the credits allowed by sections 316, 317 and 318"?

It is also interesting to note that section 317 allows a tax credit for a percentage of taxes imposed by political subdivisions of the Commonwealth. Such variations of credits will result in a situation that will be tantamount to having a different tax rate for each individual county. Such authorized variations surely lack the uniformity required by Article VIII, §1 of our Pennsylvania Constitution.

The violation of constitutional authority expressed in Article VIII, §2(b)(ii), occurs in section 319(b) of the Code wherein the class of subjects of taxation is declared to be the taxpayers, *not their property or privileges,* as specified in the constitutional provision. The credit schedule that follows does not cure this fatal defect, since it does not establish any property or privileges of taxpayers for class of subjects. It merely sets out a graduated income tax in reverse which is simply unconstitutional as long as the uniformity requirement of Article VIII, §1 remains in our Constitution. We should not forget that the constitutional mandate for uniformity in the imposition of taxes has remained unchanged since its first adoption in the Constitution of 1874. It was pointed out very early in *Appeal of Fox and Wife,* 112 Pa. 337, 352 (1886), that an act which conflicts with the uniformity clause of the Pennsylvania Constitution "must fall, no matter what inconvenience may result to the state. This portion of

the constitution is too important and valuable to be overridden by the Legislature, or frittered away by judicial construction. It was intended to, and does, sweep away forever the power of the Legislature to impose unequal burdens upon the people under the form of taxation."

In addition, the vanishing tax credit schedule of section 319(c) is arranged only on the basis of dollars and number of dependents. There is simply *no determination of poverty* nor any *determination of a need for a tax exemption* or special tax provision. Surely the absence of these essential determinations in the Code results in the uniformity provision of Article VIII, §1 and the cases decided under that requirement prevailing over a tax code that alludes to the provisions of Article VIII, §2(b)(ii) but does not adhere to its provisions. The conclusion is inescapable that, while different subjects may be reasonably classified for tax purposes, there must be no lack of uniformity within the class, either on the given subjects of the tax or the persons affected as payers. It is this controlling principle that makes Article III of the Tax Reform Code of 1971 unconstitutional since it excuses part of the class by a scheme of tax credits that results in a lack of uniformity.

The courts have recognized that a statute may be in part valid and in part invalid and, if the parts are distinct and not so interwoven as to be inseparable, that the valid portions should be sustained. *See Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280 (1950). I do not believe this is the case here. The statute must be capable of separation in fact. In my opinion, the provisions of Article III of the Tax Reform Code of 1971 are indivisible and not separable in fact. See Sutherland Statutory Construction, Vol. 2 (3rd ed. 1943) §§2403, 2404, and cases cited.

I would grant the plaintiffs the relief they seek and declare Article III of the Tax Reform Code of 1971 unconstitutional for lack of uniformity as required by Article VIII, §1 of the Pennsylvania Constitution.

OPINION BY JUDGE KRAMER: (Concurring and dissenting in part)

This case involves very important issues, presented to this Court under its original jurisdiction, in which the plaintiffs question the constitutionality of the State income tax provisions of the Tax Reform Code of 1971, Article III, Act of March 4, 1971, P. L.    , Act No. 2, 72 P.S. 7107, et seq. (hereinafter referred to as the Tax Code). Because of the importance of the issues raised, this Court has given this case the status of an emergency priority. The pleadings were completed only about twenty days before this writing, and it was not until about ten days ago that we were informed that testimony would not be taken and that the matter would be submitted to this Court on briefs and argument. The case was specially set and argued on Monday, May 17, 1971, and because the Pennsylvania Supreme Court has already indicated that it desires to hear and dispose of these cases promptly, the Judges of this Court have filed their opinions as soon as possible in an effort to aid all parties concerned, as well as all of the taxpaying citizens of the Commonwealth.

With the exceptions of Section 317 (the thirty percent of local tax credit) and Section 319 (the so-called vanishing tax credit), I concur with the majority and hold that the Tax Code meets the constitutional standards of uniformity (Article VIII, Section 1 of the Pennsylvania Constitution).

The Pennsylvania Supreme Court has long recognized that it is not possible to obtain absolute or perfect uniform and equitable taxation. In *Commonwealth v. Delaware Div. Canal Company,* 123 Pa. 594 620-21 (1889), the Pennsylvania Supreme Court in upholding the taxation of corporate loans at nominal value in contrast to other items at actual value, concluded: "Absolute equality is, of course, unattainable; a mere approximative equality is all that can reasonably be expected . . . If there is a substantial uniformity . . . even when there may be some disparity of results, if uniformity is the purpose of the Legislature, there is a substantial compliance. . . ."

If we were to strictly construe Article VIII, Section 1\* of the Pennsylvania Constitution, we would have to rule against the use of federal taxable income (line 50 of the Internal Revenue Form No. 1040) as the "tax base" upon which to apply the State tax rate (3½ percent) ; but the Pennsylvania Supreme Court has already held that the use of federal taxable income for *corporate* income tax returns is constitutional, in spite of the many deductions and exemptions permitted in a corporate return. See *Turco Paint and Varnish Company v. Kalodner,* 320 Pa. 421, 184 A. 37 (1936) ; *Commonwealth v. Eastern Motor Express, Inc.,* 398 Pa. 279, 157 A. 2d 79 (1960) ; *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942).

The argument of the plaintiffs that use of the federal tax base is an improper delegation of powers likewise has been answered by the Pennsylvania Supreme Court in the case of *Commonwealth v. Warner Bros.*

---

\* Article VIII, Section 1. "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

*Theaters, Inc., supra.* The Court there held that there was no unconstitutional delegation of legislative power in a statute which permitted the use of a federal tax base determined by the federal laws for the corporate state income taxes.

The reasons why I cannot concur with the majority on Sections 317 and 319 of the Tax Code are set forth in the following enumerated paragraphs:

1. Because of the Pennsylvania Supreme Court holding in *Kelley v. Kalodner*, 320 Pa. 180 at 186, 181 A. 598, at 601 (1935), we must first recognize the State income tax as a property tax. The *Kelley* case points out that there is some authority that a tax on income from trades, occupations, or professions may not be a property tax (citing *Pollock v. Farmers Loan and Trust Company*, 158 U.S. 601, 637, 15 S. Ct. 912 (1895)), but in any event it is well established that uniformity applies to all taxes in Pennsylvania.

At the argument in this case, counsel for the defendants agreed that Article III of the Tax Code is a property tax. The reason that this finding is imperative to this case is that without such a determination the vanishing tax credit (Section 319 of the Tax Code) does not qualify for the special tax treatment authorized by Article VIII, Section 2(b)(ii) which reads as follows: "(b) The General Assembly may, by law: (ii) Establish as a class or classes of subjects of taxation the *property or privileges* of persons *who, because of age, disability, infirmity or poverty are determined to be in need of tax exemption or of special tax provisions,* and for any such class or classes, uniform standards and qualifications. The Commonwealth, or any other taxing authority, may adopt or employ such class or classes and standards and qualifications, and except as herein provided may impose taxes, grant exemptions, or make special tax provisions in accordance therewith.

No exemption or special provision shall be made under this clause with respect to taxes upon the sale or use of personal property, and no exemption from any tax upon real property shall be granted by the General Assembly under this clause unless the General Assembly shall provide for the reimbursement of local taxing authorities by or through the Commonwealth for revenue losses occasioned by such exemption;" (Emphasis added.)

2. With regard to the vanishing tax credit provisions, the Legislature clearly stated its intent in the Tax Code to be as follows: "Section 319. Tax credit for taxpayer class.—(a) Declaration of legislative purpose. The General Assembly, in recognition of Section 2(b)(ii) of Article VIII of the Constitution of Pennsylvania which provides for the establishing as a class or classes of subjects of taxation, the property or privileges of persons who, because of *age, disability, infirmity* or *poverty,* are determined to be in need of tax exemption or of special tax provisions, hereby declares as its legislative intent and purpose to execute its power under such constitutional provision by establishing a special tax credit provision, as hereinafter provided in subsections (b) and (c) of this section." (Emphasis added.)

The problem is that the Legislature nowhere described what "age, disability, infirmity or poverty" really are. There is no legislative measure or standard by which one may "determine" who is in "need of tax exemption or of special tax provisions" as Article VIII, Section 2(b)(ii) of the Constitution requires. There is no relationship between the Tax Code's "taxable income" (Section 302(q)) and "age, infirmity, disability or poverty". If the wealthy can take advantage of Section 319, and it is not necessary that testimony be taken to prove that they obviously can, then Section

319 of the Tax Code cannot be said to meet the purpose of Article VIII, Section 2(b) (ii) of the Constitution.

It doesn't take much imagination to determine that a millionaire who has all his holdings in tax-free and exempt Pennsylvania state or Pennsylvania municipal securities, but does have some minor taxable income, will have no Pennsylvania state income tax to pay. Likewise some citizens will be able to have an annual income in the five figures and still pay no state income taxes, because of Section 319.

Although the intent of the Legislature may be meritorious, its actions in Section 319 of the Tax Code fall far short of the constitutional requirement of Article VIII, Section 2(b)(ii) and Article VIII, Section 1 (uniformity). In attempting to grant relief to the poor of our society the Legislature failed to establish those constitutional standards necessary to permit Section 319 of the Tax Code to be upheld.

The defendants properly argue that the underlying basic aim in these cases which test the constitutionality of tax statutes is *equality in the tax burden.* Section 319 of the Tax Code does not meet that test. In fact, it results in inequality in view of the fact that some wealthy Pennsylvania citizens who are not in "need" of tax relief will not share in the tax burden.

It is not for this Court to instruct the Legislature on how to grant relief of tax burdens to the poor, the aged, the disabled, or the infirm. Whether the Legislature does it by restrictions to the availability to such tax relief through maximum holdings (realty or personalty) of the individual, or a maximum allowable amount of exempt securities, or an outright description of persons entitled to such relief (even using federal standards now existing for aid to the impoverished) is within the legislative discretion rooted in

classification of taxable subjects, in which the law of this Commonwealth has been very liberal. But the mere statistical formula set forth in Section 319 of the Tax Code, which by its own language is the *sole* determination of which taxpayers are poor or aged or disabled or infirm falls short of the necessary constitutionally required standards, and should not be permitted to stand under the present law of this State.

The clear intent of Article VIII, Section 2(b)(ii) is to help people who need some relief from the burden of taxes because of their economic status in our society. This writer agrees wholeheartedly with that philosophy. This writer is not unmindful of the plight of the poor, and by writing this dissent is much chagrined to oppose an attempt to carry out such a good plan. However, I am unalterably committed to the principle that the Constitution must be interpreted under its plain meaning and intent. It is clear to me that Section 319 of the Tax Code does not provide for equality in the tax burden, but rather fosters and compounds many of those evils and inequalities of the federal income tax system, which provides additional benefits to those very fortunate citizens who are able to avoid paying their fair share of the burden of operating our government through tax advantageous investments.

As pointed out earlier, no testimony was taken in these cases. It is conceivable that it could be proven that the number of citizens who can take advantage of this Section 319 and who do not meet the constitutional qualifications of "need" is de minimis. If that is factually true, then I would not vote to upset Section 319. Unfortunately, we have no such record, and therefore I must register this dissent.

I would hold Section 319 of the Tax Code unconstitutional and thereby permit the Legislature to pass a meaningful and constitutional tax credit restricted

to those citizens who the constitutional framers intended to be benefitted by Article VIII, Section 2(b) (ii).

3. Defendants argue that because of some of our local (municipal and school) governments already have passed local taxes on the income of citizens residing or working within their boundaries, that Section 317 of the Tax Code was passed to alleviate a double tax burden.

Section 317 of the Tax Code reads as follows:

"Section 317. Taxes imposed by political subdivisions of this Commonwealth.—(a) Every resident or nonresident individual, estate or trust subject to tax under this article shall be allowed a credit against the tax otherwise due under this article equal to 30 percent of the amount of any local taxes imposed on and paid by such individual, estate or trust to any political subdivision of this Commonwealth during the calendar year 1971, except that such credit shall not apply to local taxes imposed on real estate, realty transfers or amusements.

"(b) For local taxes described in Section (a) imposed and paid in the taxable years beginning after December 31, 1971, the amount of credit base provided in this section shall not exceed 30 percent of the total amount of the local taxes which were imposed upon and paid by such individual, estate or trust during the calendar year 1971 to political subdivisions of this Commonwealth, except that in the case where no such local taxes were imposed upon and paid by such individual, estate or trust during the calendar year 1971, then the percentage rate shall be applied to the total amount of such local taxes which were imposed upon and paid by such individual, estate or trust during the calendar year in which such taxes were first imposed and paid and the amount so determined shall each year

thereafter constitute the base on which the tax credit rate shall be applied."

Even a cursory reading of Section 317 highlights a disturbing fact, i.e., that tax credit for 1971 is frozen for all time to come for the taxpayer, no matter whether he moves to a new local taxing authority or changes the amount of his income.

Residence cannot be used as a basis for different tax burdens for the same classification. (*See Danyluk v. Bethlehem Steel Company,* 406 Pa. 427, 178 A. 2d 609 (1962).)

If the intent of the Legislature is, as defendants argue, to alleviate the double tax burden on those already paying an income tax on their income, one wonders why a 30 percent, or even a 100 percent tax credit was not given to all who pay such local taxes wherever and whenever they pay them. Mere convenience or protection against all local governments passing such taxes is no excuse for avoiding the constitutional requirement of uniformity. Either a uniform tax credit should be allowed or none.

It is likewise no answer to state that for the year 1971 everyone in the class is treated alike, when it is obvious that Section 317 in no way can be said to be constitutionally uniform seven months from now. This writer is fully aware of the cases which say that there should be facts in the record showing the non-uniformity to enable a reviewing court to pass upon the constitutionality of the tax provision. However, it is my belief that if the tax measure provides for an *obvious* lack of constitutional uniformity (as this record without testimony proves), it should be struck down immediately. It smacks of unfairness to wait until hundreds of our citizens are damaged before the courts will rule on such an obvious lack of uniformity. I would hold Section 317 of the Tax Code to be unconstitutional.

I find no merit in the argument of Tilghman. I agree with the majority that he has not met his burden to prove the unconstitutionality of the Tax Code based on his argument that the Governor must submit his budget to the Legislature before the Legislature can pass a new tax. To carry his argument to its logical conclusion, a governor, standing alone, could prohibit the Legislature from raising necessary revenues to pay for the cost of government by withholding his budget.

The Tax Code, in Section 1202, has provided a severability clause which would permit the striking down of some sections of the Tax Code so long as the remainder is a complete statute. Therefore, I would hold that Sections 317 and 319 of the Tax Code violate Article VIII, Sections 1, 2(b)(ii) and 5 of the Pennsylvania Constitution and that the balance of the Tax Code is complete and constitutional.