School District of Philadelphia, Appellant, *v.* W. T. Grant Corporation, Appellee.

School District of Philadelphia, Appellant, *v.* The Southland Corporation, Appellee.

School District of Philadelphia, Appellant, *v.* Penn Fruit Company, Appellee.

Argued March 31, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Rogers and Blatt. Judge Mencer did not participate.

*Robert T. Lear*, Assistant Counsel, with him *Edward B. Soken*, General Counsel, for appellant.

*Robert R. Batt,* with him *Louis W. Ricker* and, of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for appellee, W. T. Grant Corporation.

*Gordon W. Gerber,* with him *P. J. DiQuinzio* and *Dechert, Price & Rhoads,* for appellee, The Southland Corporation.

*Ralph S. Snyder,* with him *Ralph G. Wellington* and *Schnader, Harrison, Segal & Lewis,* for appellee, Penn Fruit Company.

OPINION BY PRESIDENT JUDGE BOWMAN, June 2, 1975:

Pursuant to the provisions of section 2 of the Act of May 23, 1949, P.L. 1669, *as amended,* (Act),[1] the Philadelphia City Council authorized that city's school district (appellant) to levy and collect the general business tax conditionally imposed by the Act. This authority has been accorded appellant through ordinances adopted by said City Council on an annual basis, beginning in December of 1967.

Section 3 of the Act,[2] in pertinent part, provides:

"Every person engaging in any business in any school district of the first class . . . shall pay an annual tax at the rate of two (2) mills on each dollar of the annual receipts thereof, Provided, however, That the amount payable shall not exceed two (2) per centum of his net income."

Further, in anticipation of possible constitutional objections to the enforcement of the tax, section 3 requires the collector (appellant) to establish rules and regulations regarding allocation of the receipts of a business, where that business is not a purely local one. By instruc-

---

1.   24 P.S. §584.2 (Supp. 1974-1975).

2.   24 P.S. §584.3 (Supp. 1974-1975).

tions which accompanied the 1968[3] general business tax return forms, appellant directed taxpayers as follows:

"A taxpayer who is entitled to allocations and/or exclusions when calculating his tax according to the gross receipts method *is also entitled to an allocation of net income if the 2 percent limitation of tax is applicable.*" (Emphasis added.)

However, by regulations issued in the early part of 1969, appellant reversed this procedure, and no longer permitted allocation for purposes of the net income limitation. Therein lies the cornerstone of this dispute.

Appellees are corporations engaged in interstate commerce, which also do business in Philadelphia, and are subject to appellant's tax. On their 1968 tax returns, appellees computed their taxes due on the basis of the net income limitation, applying the 2% rate only to those portions of their net incomes allocable to their performances of business in Philadelphia. Lending no deference to the post-1968 change in appellant's policy, as reflected by the 1969 regulations, appellees computed their 1969 taxes (as measured by their gross receipts and net incomes for the year 1968) by allocating both their receipts *and their net incomes* and, after applying the respective rates, paid the lesser of the two amounts (which was, once again, the net income limitation). Appellee Penn Fruit computed its 1970 tax under this formula, as well.

Thereafter, and on various dates, appellant mailed tax assessments to the three appellees, claiming delinquencies in their 1969 tax payments. Appellee Penn Fruit was also assessed for delinquencies in its 1970 tax payment. Additionally, these assessments notified appellees of their liabilities for interest and penalties arising from

---

3. The 1968 refers to the year in which the tax is collected, not the tax year or the period by which the tax is measured. While the tax year ends on December 31 of a particular year, 24 P.S. §581.1(4) (Supp. 1974-1975), the tax is not due until May 15 of the following year. 24 P.S. §584.5 (Supp. 1974-1975).

their failure to have timely remitted the proper amount of taxes, as determined by appellant.

Appellees filed appeals from these assessments in the Court of Common Pleas of Philadelphia County. By separate orders, dated November 30, 1973, that court granted appellees' motions for summary judgment, and denied identical motions by appellant. Appellant here seeks review of those decisions.

In a memorandum opinion, filed on April 4, 1974, the lower court explained its disposition of the aforesaid motions as having been predicated upon the presence of constitutional deficiencies in appellant's interpretation and application of section 3 of the Act. The court concluded that any such deficiencies were curable by the adoption of an interpretation of section 3 which would permit taxpayers, who conducted business both within and without the City of Philadelphia, to allocate their net incomes when computing their general business tax ceilings. The appellees contend, and the court below held, that section 3 of the Act cannot and/or should not be construed in a manner which would deny such allocation. That is, either section 3 clearly permits such allocation or, if ambiguous, must be read to so permit for the section to be vested with constitutional legitimacy.[4]

Since its enactment in 1949, section 3 of the Act had remained virtually unchanged until 1967.[5] In 1967, the rate of tax, to be applied to annual receipts, was increased from one mill to two mills per dollar, and the 2% net income limitation was appended.[6] However, at that time, the allocation mandate of section 3 was reenacted in the identical language in which it originally passed in 1949.

---

4. *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1922(3).

5. All intervening changes are without relevance in the present action.

6. *See* Act of November 16, 1967, P.L. 504, §3.

"Where a *receipt* in its entirety cannot be subjected to the tax imposed by this act by reason of the provisions of the Constitution of the United States, or any other provision of law, the collector shall establish rules and regulations and methods of allocation and evaluation so that only that part of such *receipt* which is properly attributable and allocable to the doing of business in the school district levying the tax shall be taxed hereunder."[7] (Emphasis added.)

As is readily apparent, allocation is related to "receipts," and "receipts" alone. No mention of "net income" appears, and none can be implied, particularly in light of the legislature's failure to have amended the allocation provision of section 3 when the net income ceiling was added to that section in 1967. Resort to the Statutory Construction Act, or any other interpretive principles, is clearly unwarranted where a statute is free from ambiguity. Therefore, and contrary to appellees' contention, the constitutionality of section 3 must rest upon an interpretation which proscribes allocation of net income in the computation of the net income ceiling.

The uniformity clause of the Pennsylvania Constitution[8] reads as follows:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

This clause affixes two conditions precedent to the enforceability of all Pennsylvania tax provisions: (1) the classification of taxpayers subject to a specified tax must be reasonable; and (2) the tax itself must be applied equally within the designated class. If either condition fails, the tax is unenforceable for want of uniformity.

---

7.   24 P.S. §584.3 (Supp. 1974-1975).

8.   Pa. Const. art. VIII, §1.

Section 3 of the Act can be dissevered into four elements, the first of which defines the class of taxpayers subject to the tax. The remaining three apply the tax burden within the class so defined. In actuality, all four elements coalesce in delineating the affected class of taxpayers, since a want of uniformity in the imposition of the tax burden effectively fashions an additional class or additional classes of taxpayers within the statutorily defined class.

Section 3 authorizes the imposition of a tax on the annual receipts of "[e]very person engaging in any business in any school district of the first class. . . ." Viewed singly, that is, without regard to the tax computation elements, no want of uniformity appears within the designated class. The imposition of the general business tax is predicated upon the engaging in of business within certain territorial limits, and the statute, by its expressed language, applies to all persons so engaged. No arbitrary distinctions are framed within the defined class. By way of contrast, in *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 196 A.2d 664 (1964), the invalidated provision levied a municipal occupation tax upon all workers earning $600 or more. In that case, the Supreme Court could find no reasonable and constitutional justification for exempting low income workers from the burden of a tax allegedly posited upon the privilege of holding an occupation, not upon the privilege of earning a certain wage.

The remaining elements of section 3 are the tax base, annual receipts, the tax rate, two mills per dollar, and the tax ceiling, 2% of net income. Despite the uniform imposition of the general business tax upon all persons engaging in business, each of these elements must be analyzed to determine whether either or all of them create subclasses within the expressed class, and thus, present a problem of nonuniformity.

The tax base, annual receipts, is sufficiently broad in scope so as not to produce any arbitrary advantages or disadvantages for any members of the statutorily defined class.

> "(5) 'Receipts.' Cash, credits, property of any kind or nature, received in or allocable to a school district of the first class from any business or by reason of any sale made ... *without deduction therefrom* on account of the cost of property sold, materials used, labor, service, or other cost, interest or discount paid, or any other expense."[9] (Emphasis added.)

Having failed to provide any exemptions, exclusions, or deductions, the legislature avoided the pitfalls the Supreme Court found so prominent in the Pennsylvania personal income tax, which was passed in 1971.[10] *See Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971). That tax, while expressly imposed upon all income from any source, was to have been computed by reference to *taxable income,* as defined in the Internal Revenue Code. The reliance upon taxable income as the tax base would have necessarily fostered discrepancies in tax burdens among persons having identical gross incomes, a distinctly nonuniform result.

The tax rate of two mills per dollar is a constant. That is, unlike the graduated tax of *Amidon, supra,* it does not rise or fall with permutations in the amount of a person's gross receipts. Thus, the rate does not, by itself, generate any problems of nonuniformity.

The tax ceiling of 2% of net income clearly presents a violation of the uniformity clause. First, "net" necessarily involves deductions for expenses, and thereby creates the potential for inequality of tax burden between two businesses having identical annual receipts.

---

9. Section 1 of the Act, 24 P.S. §584.1(5) (Supp. 1974-1975).

10. Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6.

The general business tax thus assumes the posture of a discriminatory tax founded, not upon the doing of business in a particular locale, a uniform standard, but rather upon the making of profit in a particular locale, a nonuniform standard. Secondly, taken to its natural extreme, the tax ceiling so distorts the scope of section 3 that a tax, having alleged universal application within a particular sphere, may not, in fact, so have. The presence of the tax ceiling in section 3 effectively works a rewrite of that section so that, while avowedly taxing all persons doing business in a school district of the first class, the same section then proceeds to excuse any such persons who had *no net income* for the tax year from bearing any of the tax burden imposed. Although section 3 is perhaps more subtle in its discrimination, it is no less constitutionally infirmed than the occupation tax considered in *Saulsbury, supra.*

Appellees' assertion that the permitted allocation of net income would cure any constitutional defects is not persuasive. The nonuniformity results from the establishment of subclasses within the statutorily defined class. The allocation of net income would merely serve to redistribute the tax burden among these various subclasses. It would not eliminate the subclasses and provide equality of treatment among all persons engaged in business.

Having determined that section 3, as it presently exists, contains a constitutional infirmity, we must now decide whether the entire section must fall, or, whether the offending provision may be severed.

> "It is true that a statute or ordinance may be partially valid and partially invalid, and that if the provisions are distinct and not so interwoven as to be inseparable, that the courts should sustain the valid portions."[11]

The test of severability has two components: (1) the legislature must have intended the statute to be severable;

---

11. *Saulsbury, supra,* 413 Pa. at 320, 196 A.2d at 666.

and (2) the statute must be capable of meaningful application without the excised portion. *Saulsbury, supra.* While the existence of a savings or severability clause within the body of the act, of which the statutory provision is part, is not conclusive on the general question of severability, such a clause satisfies the legislative intent component. *Saulsbury, supra.* The Act, in fact, contains a savings clause.[12]

However, even a clear legislative mandate will not suffice to save the valid portions of a statutory provision, if those portions cannot stand alone. Section 3, less the net income ceiling, remains a self-sufficient tax scheme:

> "Every person engaging in any business in any school district of the first class . . . shall pay an annual tax at the rate of two (2) mills on each dollar of the annual receipts thereof. . . ."

There is no lack of clarity in the language, nor are there any obstacles to an effective application of its terms. The statute continues to define the class of taxpayers, the base upon which the tax is to be paid, and the rate to be applied to such base. Absent the tax ceiling, the burden imposed is not so harsh as to be unreasonable and oppressive. *See State Board of Chiropratic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 272 A.2d 478 (1971). While the tax ceiling was intended to correlate the burdens of the general business tax with the taxpayers' respective abilities to pay, the impetus for its addition to section 3 must have been a sense of equity, if only because such addition could not have been motivated by legal necessity. Appellees themselves have admitted their readiness to pay the higher tax should the legal issues be decided to their detriment, and have waged their attacks on grounds of discrimination, not oppression. Finally, the deletion of the net income ceiling in no way frustrates the legislative purpose of the tax,

---

12. Section 12 (c) of the Act, 24 P.S. §584.12 (c).

412

the provision of funds for the maintenance of a public school system. *State Board of Chiropractic Examiners, supra.*

Section 3 of the Act of May 23, 1949, P.L. 1669, *as amended,* 24 P.S. §584.3 (Supp. 1974-1975), is unconstitutional for want of uniformity insofar as it allows a ceiling upon tax liability of a gross receipts tax to be measured by *net* income. However, this constitutional infirmity is cured by severing from said section the proviso fixing maximum tax liability not to exceed 2% of net income, which proviso we conclude is severable, thus restoring uniformity and constitutionality to the tax imposed by section 3.

Appellee Southland further questions appellant's attempted exaction of interest and penalties concomitant with the tax assessment. Southland alleges that its decision to pay the lesser amount of tax was made in good faith, without negligence, and with no intent to defraud. Even assuming the veracity of these allegations, they are without legal sufficiency as defenses to the imposition of interest and penalties under the Act.

"(b) *If for any reason the tax is not paid when due* in each year, interest ... and an additional penalty . . . shall be added and collected by the collector. . . ."[13] (Emphasis added.)

Finally, appellees' federal constitutional objections need not be considered here, since all such objections were based upon appellant's denial of net income allocation, an issue now rendered moot.

The orders of the Court of Common Pleas of Philadelphia County, dated November 30, 1973, which orders granted appellees' motions for summary judgment and denied identical motions by appellant, are hereby reversed.

---

13. Section 8 of the Act, 24 P.S. §584.8.