Commonwealth of Pennsylvania *v.* Phoebe W. Haas Charitable Trust "A". F. Otto Haas, et al., Trustees, Appellants.

Argued February 2, 1977, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Philip C. Herr, II,* with him *Philip C. Herr, John
H. Potts,* and *Herr, Potts & Herr,* for appellant.

*R. Scott Shearer,* Deputy Attorney General, with
him *Donald J. Murphy,* Deputy Attorney General, for
appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, March 11,
1977:

The refusal by the Board of Finance and Revenue
to grant appellant's petition for refund of $502.99 paid
with respect to 1972 personal income tax under Arti-
cle III of the Tax Reform Code of 1971 (Act)[1] is the

---

[1] Act of March 4, 1971, P.L. 6, added by the Act of August 31,
1971, P.L. 362, 72 P.S. §7301 et seq. amending the Tax Reform Code

subject of this appeal by the Phoebe W. Haas Charitable Trust "A."

The stipulated facts disclose that the inter vivos trust in question was created by a resident grantor by Trust Agreement dated January 7, 1972. For trust administration purposes it is subject to and under the jurisdiction of the Court of Common Pleas of Montgomery County, Orphans' Court Division. Although its name implies sole dedication to charitable purposes, it is conceded, as it must be, that such is not the case. The trust instrument allows for the possibility of the future distribution of its principal for non-charitable purposes.[2] It is the application of the Act to certain capital gains realized by the Trust during the tax year 1972 and the manner by which such capital gains are to be accounted for and distributed under the Trust Agreement that gives rise to this controversy.

The Trust plan directs that all income be paid to charity for a period terminating twenty years after the death of the last of grantor's two sons;[3] thereupon all income and all principal (with the exception of amounts required by Article Eighteen to be paid to charity) are to be paid to such persons or organizations as the grantor's two sons may appoint by will.

---

of 1971 by adding a new Article III replacing former Article III which had been declared unconstitutional. *Amidon v. Kane*, 444 Pa. 38, 279 A.2d 53 (1971).

[2] While not specifically stipulated as a fact, it would appear from stipulated facts and from appellant's brief that grantor's two sons, possessed of powers of appointment over the remainder estate, have exercised such powers in favor of their heirs and not for charitable purposes.

[3] With court approval the Trust was later divided into two equal parts for the heirs of the two sons respectively. Hence Trust "A" here involved and Trust "B" with the same issues and stipulated to be governed by the outcome of this appeal.

Article Eighteen of the Trust requires that the income of the Trust during the charitable period equal an average of 3 1/2% of the value of the principal of the Trust at the time of its creation; and the Trust Agreement further provides that there shall be restored to charity from principal or the subsequent or remainder interests any ''short fall'' of such amounts plus compound interest thereon.

As disclosed by its 1972 Pennsylvania Fiduciary Income Tax Return, the Trust received that year dividends of $256,700.10 and interest of $190,896.55, all of which was permanently set aside for charity after payment of administration expenses. Also, during that year, it realized capital gains from two sources; (a) gains of $9,658.32 on sale of assets allocated to the undistributed and invested income account for the benefit of charities and so set aside;[4] (b) gains of $21,869.27 on the sale of principal assets and allocated to principal. This second class of capital gains realized are reflected in the tax return as taxable *to the trust* producing a tax liability of $502.99 which was paid by the Trust and is the subject of this appeal by way of petition for refund.

It is also stipulated that a ''running account'' has been established to give effect to Article Eighteen of the Trust Agreement, which account discloses a net debit balance at the end of the year 1972 of $980,424.-12, being the amount by which the income of the trust to that date fell short of the value of 3 1/2% of the principal of the Trust upon its creation. There appears to be little, if any, relevancy of this fact to the issues before us as briefed and argued by the parties. Appellant does not assert nor do the stipulated facts support a conclusion that the Article Eighteen charge upon principal during the life of the Trust will necessarily sequester it to charitable purposes.

---

[4] These capital gains are not in controversy in this appeal.

Appellant taxpayer poses the issue before us as follows:

Where the net income of a split interest trust is devoted exclusively to charity for a period measured by twenty years after the death of the last to die of two persons, is the trust excluded from the Pennsylvania Personal Income Tax as a ''charitable trust'' in any year during the charitable period in which all of the current net income is paid to or permanently set aside for charity.

We frame the issue somewhat differently. Is a capital gain realized by a trust in a particular year taxable income to the trust under the provisions of the Act where, by reason of the provisions of the Trust instrument, such capital gain is not distributed or distributable to any beneficiary during or at the end of such year but is allocated to principal for future distribution to non-charitable purposes?

Because the Act and regulations promulgated thereunder exclude charitable trusts from the definition of resident trusts and it is only the income of resident trusts which is subjected to taxation either in the hands of the trust or its beneficiaries, appellant would have us conclude that all ''income'' received by it in 1972 is not subject to taxation under the Act. Alternately, it argues that inasmuch as only an insubstantial part of its 1972 activity (the realization of the capital gains in question) was not in furtherance of its charitable purposes it should not be subjected to taxation of the capital gains in question. It cites our decision in *City of Philadelphia, Board of Revision of Taxes v. Elkins,* 11 Pa. Commonwealth Ct. 120, 312 A.2d 806 (1973) as requiring such a conclusion.

In our opinion, the capital gains here in issue are subject to taxation in the hands of appellant as tax-

able income under the Act, and our decision in *Elkins, supra,* does not compel the opposite result.

In *Elkins, supra,* we were concerned with an exemption from a personal property tax upon enumerated classes of intangible personal property held by residents upon a given date, the exemption being afforded with respect to personal property held by a "trustee for a . . . charitable organization, no part of the net earnings of which inures to the benefit of any . . . individual." We concluded that the trust there in question, the income of which was devoted exclusively to charitable purposes, was exempt, as the tax imposed and payable out of income would deprive charities of that portion of trust income. Here we are concerned with an excise tax upon the privilege of receiving taxable income, including net gains derived from the sale of capital assets. It is imposed upon resident individuals, estates and trusts excluding only charitable trusts and the statute itself fixes the burden of the tax upon the trust beneficiaries or the trust itself depending upon the circumstances. *Elkins* is distinguishable upon both its facts and the nature of the tax in question. Nor is there any suggestion in this case that the trust income must bear the tax on the capital gains here in question.

Section 301 of the Act, 72 P.S. §7301, defines a charitable trust to be one "operated exclusively for religious, charitable, scientific, literary or educational purposes" and, as here pertinent, *excludes* from the meaning of "resident trust" all charitable trusts. Section 302 of the Act, 72 P.S. §7302, imposes an annual tax to be paid by resident individuals, estates or trusts at the rate of 2.3%[5] on the privilege of receiving taxable income as defined by Section 303, 72 P.S. §7303, which provision includes within the meaning

---

[5] The tax rate is currently 2%.

of taxable income the net gain or net income, less net losses, derived from the sale, exchange or other disposition of property. As to resident estates and trusts the burden of the tax is fixed by Section 305, 72 P.S. §7305, which provides:

> The income of a beneficiary of an estate or trust in respect of such estate or trust shall consist of that part of the income or gains received by the estate or trust for its taxable year ending within or with the beneficiary's taxable year which under the governing instrument and applicable State law, is required to be distributed currently or is in fact paid or credited to said beneficiary. The income or gains of the estate or trust, if any, taxable to such estate or trust shall consist of the income or gains received by it which has not been distributed or credited to its beneficiaries.

Within this statutory framework, neither appellants major premise to support the nontaxability of the capital gains in question can stand nor can its subsidiary argument that its non-charitable function, administration and purpose for the tax year in question is so minimal that it should be considered a charitable trust for all purposes during that year.

We are unaware of any rule of trust law that recognizes or permits a trust estate, whether it be characterized as a "split interest" trust or otherwise, to be administered from its inception to termination other than consistent with its purposes and objectives as to both the life and remainder interests. As this Trust has both charitable and non-charitable purposes and objectives, it cannot be declared at any point in time during its existence as being administered for only its charitable purposes and objectives. Nor can it during the tax year in question thereby meet the test of "charitable trust" as defined by the

Act as it is not one devoted *exclusively* to charitable purposes. That the net income of this Trust—as defined for trust administration purposes—inures to the benefit of charities does not alter its hybrid nature of having both charitable and non-charitable purposes and objectives. We are here concerned not with the net income of a trust as defined for trust administration purposes and accordingly distributed or set aside for charitable purposes. Rather we are concerned with taxation of income as defined by the taxing statute which is imposed upon resident individuals, estates and trusts. Not qualifying as a charitable trust for want of an exclusive charitable purpose, appellant Trust is subject to a tax on income as defined by the Act by reason of being a resident trust.

As it is not disputed that the capital gains in question are within the classes of income subjected to tax by Section 303 of the Act, nor that the resulting tax liability, if the Trust is subject to the Act, falls upon the Trust rather than the remainder beneficiaries as prescribed by Section 305, we shall, for the foregoing reasons, sustain the Board of Finance and Revenue and dismiss the appeal.

### ORDER

Now, March 11, 1977, the appeal of the Phoebe W. Haas Charitable Trust "A" is hereby dismissed and the action of the Board of Finance and Revenue is hereby sustained. Unless exceptions are filed within thirty (30) days of the date hereof, the Chief Clerk shall enter judgment in favor of the Commonwealth.